GRIGOLEIT, INC., Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE SANITARY DISTRICT OF DECATUR, Defendant-Appellant.

Fourth District No. 4—91—0744

Opinion filed August 24, 1992.

 

Anthony B. Cameron, Special Counsel, of Quincy, for appellant.

Erickson, Davis, Murphy, Griffith & Walsh, Ltd., of Decatur, for appellee.

JUSTICE COOK delivered the opinion of the court:

The defendant Board of Trustees of the Sanitary District of Decatur (Board) entered an order revoking the permit of plaintiff Grigoleit, Inc. (Grigoleit), to discharge its industrial wastewater into the sanitary district's publicly owned treatment works (POTW). The circuit court on administrative review reversed the order of the Board based on language contained in the permit and declined to reach the fourth amendment constitutional issue raised by plaintiff. The Board appeals, alleging (1) the permit and the pretreatment ordinance enacted by the district require routine and random access for inspection to the interior of Grigoleit's premises as a condition for discharge privileges, and (2) Grigoleit had no valid basis for refusing to afford such access to the district's personnel.

The Sanitary District of Decatur (district) is duly organized pursuant to the Sanitary District Act of 1917 (Act) (Ill. Rev. Stat. 1989, ch. 42, pars. 298.99 through 319j). Various provisions of that act require the district to adopt ordinances or regulations prohibiting or regulating discharges of inadmissible waste to sewers within the district (Ill. Rev. Stat. 1989, ch. 42, par. 317(d)); to study and investigate methods of abating pollutants that are detrimental to the public health or which might interfere with the operation of the sewage treatment plant (Ill. Rev. Stat. 1989, ch. 42, par. 317h(2)); to prohibit a user from discharging wastewater which may cause pollution of waters within the sanitary district without a written permit granted by the

district (Ill. Rev. Stat. 1989, ch. 42, par. 317h(3)); to adopt and enforce regulations governing the issuance of permits and submission of plans and data relative thereto (Ill. Rev. Stat. 1989, ch. 42, par. 317h(7)); and, upon the failure by conference, conciliation and persuasion to correct or remedy any claimed violation, to allow issuance of an order to a user to cease discharge or to order discharge permits previously issued to be revoked (Ill. Rev. Stat. 1989, ch. 42, par. 317h(8)).

Pursuant to provisions of the Act, the district adopted pretreatment ordinance No. 85–2. (Sanitary District, Decatur, Ill., Ordinance 85–2 (July 12, 1985).) The ordinance prohibited the discharge by any "significant industrial user" (defined *inter alia* as a user of the POTW discharging 25,000 gallons or more per day) without a permit or contrary to the conditions of the permit; required creation of a spill-containment plan; called for the submission of technical and discharge reports; imposed limitations on both the volumetric rate of discharge and the concentrations of regulated pollutants contained in the wastewater; and required the permittee to allow the district ready access, at reasonable times, to all parts of its premises in which a discharge source or treatment system is located or in which records required by the ordinance are kept for purposes of inspection, sampling and examination.

During the permit application process, the president of Grigoleit had advised the district that it would "need a warrant for initial on site inspection." On June 23, 1986, following some negotiation as to language of the permit, Grigoleit was issued a wastewater discharge permit. The language of the permit included the following:

"IN CONSIDERATION OF THE GRANTING OF THIS PERMIT, the applicant agrees

\* \* \*

7. To provide immediate access to authorized personnel of the District to any facility directly or indirectly connected to the District's sewerage system under emergency conditions and at all other reasonable times.

B. *MONITORING REQUIREMENTS AND LOCATION*
\* \* \*

2. The existing manhole located in the parking lot west of building is hereby named as the designated sample point for the Industrial User. \* \* \* Analytical results from samples taken from this location according to sampling procedures provided for by Section 400.120 of Ordinance No. 85–2, as amended shall be accepted as binding *for all purposes of providing satis-*

*factory evidence of compliance with conditions of this permit."*
(The emphasized language had been added by Grigoleit.)

The permit was issued on June 23, 1986, and forwarded to Grigoleit together with a letter stating "[a]pproval of this permit is contingent upon continuing compliance with all applicable Ordinance requirements." The Board thereafter made several telephone and written requests for a facilities inspection, in order "to identify potential and actual sources of discharge that could damage the sewers, be detrimental to the District's biological treatment system and method of sludge disposal on the land." Grigoleit refused all such requests, informing the Board it would need a warrant to gain access to any area of Grigoleit's facility other than the exterior manhole in the parking lot.

On March 3, 1987, the Board sent a notice of violation based on Grigoleit's refusal to allow the district personnel reasonable access to its premises and scheduling a preenforcement compliance meeting. Grigoleit advised the Board it would not attend the meeting. The Board then notified Grigoleit of a show-cause hearing for revocation of its permit, which was held June 30, 1987.

That hearing was attended by representatives of the district and counsel for Grigoleit. Robert Howie, president of Grigoleit, stated that the company was a contract manufacturer, primarily producing decorative trim for the appliance industry. According to Howie, all of Grigoleit's wastewater flowed from three separate drains within the facility and then into the manhole in the parking lot. He stated that the company's policy was to not allow any access to its premises by nonemployees without a warrant. Howie had added the final clause to paragraph B(2) of the permit and it was his interpretation of the clause that the manhole in the parking lot would "provide evidence of full compliance with the terms of the permit and thereby the ordinance and any other access to the plant must be for cause and through a warrant." When cross-examined as to the definition of hazardous or categorized substances and the meaning of an "upset plan," Howie stated that he was not in a position to discuss those issues.

On February 23, 1988, the Board issued an order revoking Grigoleit's wastewater discharge permit based on its refusal to afford "reasonable and regular access to the enclosed premises of its facility for purposes rationally related to the pretreatment ordinance and the permit." Grigoleit sought administrative review of that order, and on March 19, 1991, the circuit court reversed the Board's order and ordered Grigoleit's permit reinstated. The court found the Board's order contrary to law, against the manifest weight of the evidence and in-

valid, noting that the provisions of paragraph B(2) were binding for demonstrating compliance and the district had not been denied access for sampling to the subject manhole. The court subsequently denied the Board's motion for reconsideration, finding the language of the permit not contrary to the statutes and ordinances.

There is no factual dispute between the parties that Grigoleit has denied the district reasonable access to its operational buildings but has granted it access to a manhole in the parking lot for purposes of monitoring discharge of its wastewater into the POTW. On appeal to this court, Grigoleit takes the position that under the terms of the permit it consented to only a limited "search" of the manhole in the parking lot, that it has fulfilled the provisions of paragraph B(2), and has thereby satisfied all of the inspection requirements of its permit since, under the fourth amendment to the United States Constitution, the district may not enter its facility absent a warrant and without its consent. The Board takes the position that the permit (*i.e.*, paragraph (7) of the opening sections), as well as the pretreatment ordinance, make premises inspections at reasonable times a condition of possessing the permit and a condition of the privilege of industrial discharge into the sewer system, violations of which conditions may subject the user to revocation of the permit and subsequent disconnection from the POTW.

We first address Grigoleit's asserted reliance on the fourth amendment as a backdrop for its claim that the district may not inspect its premises without first obtaining a warrant for an administrative search. In this case, there has been no unconsented search of Grigoleit's premises nor evidence recovered in any search sought to be presented in proceedings against it. Neither is this an enforcement proceeding brought to enjoin Grigoleit's refusal to consent to inspection by the district. Rather, the narrower issue before this court, as it was before the circuit court in administrative review, is whether the Board's revocation of Grigoleit's permit to discharge for failure to comport with the provisions of the permit and the ordinance was against the manifest weight of the evidence. Although the parties have briefed fourth amendment issues raised in the context of a regulatory scheme requiring administrative searches, on the facts of this case and for the reasons which follow, we find no questions of constitutional magnitude are presented.

Unlike the cases cited to this court involving administrative searches, Grigoleit is not in this instance subject to a regulatory scheme purporting to regulate the internal conduct of its business activities (see, *e.g., New York v. Burger* (1987), 482 U.S. 691, 702, 96

L. Ed. 2d 601, 614, 107 S. Ct. 2636, 2644 (statute authorizing warrantless search of an automobile junkyard fell within exception to warrant requirement for administrative inspections of pervasively regulated industries); *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 325, 56 L. Ed. 2d 305, 319, 98 S. Ct. 1816, 1827 (Occupational Safety and Health Administration provision allowing inspectors to enter any plant at reasonable times held unconstitutional); *Donovan v. Dewey* (1981), 452 U.S. 594, 606, 69 L. Ed. 2d 262, 274, 101 S. Ct. 2534, 2542 (provision of Federal Mine Safety and Health Act of 1977 (30 U.S.C. §813(a) (1976 & Supp. III 1980)) authorizing warrantless inspection of mines upheld).) Grigoleit instead is subject to regulation which controls the external disposal of wastewater it has generated onto property in which it possesses no interest. It is therefore pertinent to review the nature of Grigoleit's right to utilize the district's POTW for disposal of its industrial wastewater.

■ Under the Illinois Municipal Code (Code), municipalities have the power to regulate the use of drains and sewers. (Ill. Rev. Stat. 1989, ch. 24, pars. 11–109–1, 11–20–10.) Generally, a permit to connect to municipal sewers is in the nature of a license with respect to real property and no vested right to connection exists. (See *La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 665, 470 N.E.2d 1239, 1245.) It has long been settled that a license in respect of real property, either oral or written, is a revocable privilege to do an act or a series of acts upon the land of another without possessing any estate or interest in such land. *City of Berwyn v. Berglund* (1912), 255 Ill. 498, 500, 99 N.E. 705, 706-07; *Boland v. Walters* (1931), 346 Ill. 184, 188, 178 N.E. 359, 361; see also *Charlton v. Champaign Park District* (1982), 110 Ill. App. 3d 554, 558, 442 N.E.2d 915, 918.

■ ■ The drains within Grigoleit's facility and the sewer manhole in its parking lot connect with the publicly owned sewerage system and treatment works operated by the district. Industrial wastewater generated within Grigoleit's facility by virtue of its industrial operations discharges directly into property owned by the district. Discharges by Grigoleit therefore constitute a series of acts performed upon land in which it possesses no estate or interest. By grant of statutory authority, the Board may condition or prohibit such usage. Under section 7f of the Metropolitan Water Reclamation Act, the board of trustees of any sanitary district is authorized to regulate, limit, deny, extend or otherwise control any connection to any sewer which will directly or indirectly discharge into the sanitary district sewerage system. (Ill. Rev. Stat. 1989, ch. 42, par. 326f.) Usage pur-

suant to such statutory grant of authority is by definition permissive and can confer no more than a revocable privilege on the licensee. We find nothing in the Code, the Act, or the case law granting an industrial user such as Grigoleit a vested right to continue discharge of its effluent into the district's POTW upon its own terms and conditions. In *La Salle National*, the bank in 1927 had obtained a sewer connection permit allowing connection of the building's sewer to the nearby city sewer main. In 1977, pursuant to the city's municipal code, the city counsel enacted an ordinance revoking the bank's sewer connection permit and ordering the sewer and drains servicing the building to be removed immediately. (*La Salle National Bank*, 128 Ill. App. 3d at 659-60, 470 N.E.2d at 1242.) The bank challenged the constitutionality of the ordinance on grounds of procedural due process and a taking of private property for public use without just compensation. The court concluded the sewer connection permit was not a constitutionally protected interest in property. Based on language of the municipal code providing that "the sewer connection permit was revocable at any time," the court found the bank had no vested right to connection and the permit was merely a license which "created no more than a unilateral aspiration of continued permissive use of municipal sewer systems." *La Salle National Bank*, 128 Ill. App. 3d at 665-66, 470 N.E.2d at 1246.

The right to connect to a sewer system of a municipality is subject to reasonable regulations imposed by the city and State, which may impose such conditions as may be necessary to accomplish the purpose of the ordinance. (*Airtex Products, Inc. v. Pollution Control Board* (1973), 15 Ill. App. 3d 238, 243, 303 N.E.2d 498, 503, *aff'd sub nom. Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 326 N.E.2d 406.) Under these circumstances, utilization of the district's sewerage system for discharge of industrial wastewater is permissive only, and revocation of such permission is, in the absence of fraud on the part of the district, limited only by Grigoleit's compliance with reasonable regulations formulated by the district. See *Frank v. State Sanitary Water Board* (1961), 33 Ill. App. 2d 1, 6, 178 N.E.2d 415, 418.

Pursuant to its status as a conditional or regulated licensee, Grigoleit has no constitutionally protected interest in the sewer connection and may not accept the privileges afforded by the license while simultaneously raising the fourth amendment as a bar to enforcement of the very conditions upon which extension of the license is predicated. Grigoleit is free to reject the advantages afforded by extension of the proffered license, together with the corresponding require-

ments. That is merely a business decision for Grigoleit to make. If Grigoleit chooses to withhold consent to inspection (as it did here), the permit may be revoked and no inspection takes place—there is no entry of Grigoleit's facility and there is no search implicating fourth amendment protections. It is the nature of the license extended to Grigoleit, as well as the element of choice in its acceptance or rejection, which distinguishes this case from cases cited by the parties involving regulatory searches. The fourth amendment constitutional provisions respecting issues of administrative searches have no application to the facts of this case.

■ We next examine whether revocation of the license was proper in this instance. Courts will restrain the exercise of a legal right to revoke a license and will construe the license as an agreement to give the right when the conduct of the licensor has been such that the assertion of legal title would operate as a fraud upon the licensee. (*Girard v. Lehigh Stone Co.* (1917), 280 Ill. 479, 484, 117 N.E. 698, 700; *Boland*, 346 Ill. at 188-89, 178 N.E. at 361; *Mueller v. Keller* (1960), 18 Ill. 2d 334, 341, 164 N.E.2d 28, 33; *Petersen v. Corrubia* (1961), 21 Ill. 2d 525, 532, 173 N.E.2d 499, 504.) The requirements of the fraud exception to the revocability of licenses are (1) the licensee has spent substantial sums of money which were induced by the affirmative efforts of the licensor, (2) improvements which the licensee made were at least partly for the benefit of the licensor; and (3) revocation would result in an injury which would amount to great wrong and oppression. *Keck v. Scharf* (1980), 80 Ill. App. 3d 832, 836, 400 N.E.2d 503, 506, citing *Forbes v. Balenseifer* (1874), 74 Ill. 183, 186.

■ In applying these rules of law to the facts in this case, it is apparent that the fraud exception has no application to the Board's authority to revoke Grigoleit's permit. Grigoleit had apparently been utilizing the POTW for disposal of its industrial wastewater for some years prior to the institution of the permit program by the district based on a parol license, subject only to payment of user fees. Following adoption of the pretreatment ordinance, Grigoleit became subject to regulations conditioning and limiting the exercise of its license to discharge wastewater constituents incompatible with the district's biological treatment system. Grigoleit has claimed no expenditures made on its sewer connections with the POTW nor improvements initiated at the behest of the district prior to enactment of the ordinance which would result in great wrong to it should the permit be revoked and connections with the POTW discontinued. Moreover, Grigoleit can avoid any adverse effects occasioned by termination of its discharge

privileges by comporting with the terms of the ordinance and the permit. Therefore, Grigoleit is not excused from compliance with the ordinance based on a fraud exception to revocability of its permit.

■ Next, we review the circuit court's finding that paragraph B(2) of the permit limits Grigoleit's inspection obligations to the manhole in the parking lot, and thereby restricts the Board's right to revoke the permit and disconnect the sewer connection to the POTW. The prime consideration in the construction of any instrument is to ascertain and effectuate the intent of the parties at the time of execution of the document (*South Center Department Store, Inc. v. South Parkway Building Corp.* (1958), 19 Ill. App. 2d 61, 68, 153 N.E.2d 241, 244; *Law v. Kane* (1943), 384 Ill. 591, 596, 52 N.E.2d 212, 214); and effect must be given to each clause, word, or term employed by the parties, rejecting none as meaningless or surplusage. (*Dolley v. Powers* (1949), 404 Ill. 510, 512-13, 89 N.E.2d 412, 414.) Instruments should be given their fair and reasonable interpretation based on consideration of the language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, 478 N.E.2d 311, 314.) As originally formulated at the time of submission to Grigoleit, paragraph B(2), entitled "MONITORING REQUIREMENTS AND LOCATION," provided that analytical results obtained from manhole samples would be binding. Grigoleit added the language "for all purposes of providing satisfactory evidence of compliance with conditions of this permit." Grigoleit ignores other conditions of the permit which impose affirmative duties on it unrelated to the sampling requirements, such as record keeping, establishment of a spill-containment plan, certification for disposal of wastewater from Grigoleit's tool-plating works, payment of surcharge or user fees, and an agreement by Grigoleit pursuant to paragraph (7) of the opening provisions, "to provide immediate access to authorized personnel of the District to any facility *** under emergency conditions *and at all other reasonable times.*" (Emphasis added.) Under Grigoleit's interpretation of paragraph B(2), all these other provisions would be rendered meaningless or surplusage. We cannot accept such an interpretation in the absence of clear language in the agreement.

The permit makes frequent reference to various provisions of pretreatment ordinance No. 85—2. Section 400.105(d) of that ordinance provides: "Wastewater Discharge Permits shall be expressly subject to all provisions of this Ordinance and all other applicable regulations, user charges, and fees established by the POTW." (Sanitary District, Decatur, Ill., Ordinance 85—2, §400.105(d) (July 12, 1985).) We are reluctant to construe the permit in such a manner as to render it at odds with the ordinance.

Grigoleit implicitly acknowledges that other provisions of the ordinance are incorporated as conditions imposed on the licensee via the permit, based on its citation to section 400.105(d)(12), which allows the district to negotiate for inclusion in the permit of other conditions as may be necessary to insure compliance. (Sanitary District, Decatur, Ill., Ordinance 85—2, §400.105(d)(12) (July 12, 1985).) Aside from the fact that the language added by Grigoleit in paragraph B(2) does not serve to "insure compliance," Grigoleit cannot selectively overlay only those provisions of the ordinance with which it is in agreement. All provisions of the ordinance necessarily apply to define the terms pursuant to which Grigoleit is permitted to discharge into the POTW. Section 400.125(a) expressly requires that Grigoleit allow "ready access" to POTW representatives to "all parts of said premises" for the purposes of inspection. (Sanitary District, Decatur, Ill., Ordinance 85—2, §400.125(a) (July 12, 1985).) Upon failure to allow such inspection, the Board may revoke the user's permit.

■ Although Grigoleit would have the limiting language of paragraph B(2) control all other provisions of the permit, including paragraph (7) of the opening provisions, we cannot conclude such was the intent of the parties. Acceptance of Grigoleit's view that paragraph B(2) is the sum total of its obligations as licensee under the terms of the permit would subvert the Board's ability "[t]o prevent the introduction of pollutants into the POTW" (Sanitary District, Decatur, Ill., Ordinance 85—2, §100.105(c) (July 12, 1985)) and render its exercise of authority to be in derogation of the ordinance. A municipal entity must comply with its own ordinances. (See *Baltis v. Village of Westchester* (1954), 3 Ill. 2d 388, 407, 121 N.E.2d 495, 505.) We find the circuit court's order reversing the Board's revocation of Grigoleit's permit to discharge into the POTW against the manifest weight of the evidence. (See *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885.) Accordingly, the circuit court's order is reversed and the Board's order revoking the permit of Grigoleit is reinstated.

Reversed and Board's order reinstated.

GREEN, P.J., and LUND, J., concur.