FOURTH DIVISION

AUGUST 21, 1997

No. 1--96--1064

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellant,

v.

ELECTRONIC PLATING COMPANY, ROBERT PORCELLI, and HARSHAD PATEL,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)  

Appeal from the

Circuit Court of

Cook County

No. 94--CR--10434

Honorable

Eugene Campion,

Judge Presiding.

MODIFIED ON DENIAL OF REHEARING

JUSTICE CERDA delivered the opinion of the court:

Defendants, Electronic-Plating Company (EPC) and two company officials, Robert Porcelli and Harshad Patel, were indicted on 22 counts of introducing contaminants into a sewage works from a non-domestic source (415 ILCS 5/12(h); 5/44 (j)(1)(H)(West 1994)), one count of unauthorized use of hazardous waste (415 ILCS 5/44 (d)(1)(A)(West 1994); 35 Ill. Adm. Code, §722.134), and one count of conspiracy (720 ILCS 5/8-2; 415 ILCS 5/12(h)(West 1994)).  Prior to trial, defendants filed a motion to suppress evidence, contending that the evidence recovered by the Metropolitan Water Reclamation District (District) agents had been illegally obtained in violation of the U.S. Constitution's fourth amendment.  Following a hearing, the trial court granted the motion to suppress.  On appeal, the State asserts that the trial court erred because (1) EPC lacked a reasonable expectation of privacy in their sewer connection; (2) EPC lacked a possessory interest in the wastewaters that were being irretrievably discharged from its plant; and (3) the search conducted was authorized by a valid statute.  For the following reasons, we reverse and remand.

The issue in this case is whether the District conducted a search and seizure under the fourth amendment when it obtained samples of the wastewaters EPC had flushed out into a pipe that was connected to the District's sewerage system.

On June 26, 1992, the District received an anonymous tip from an alleged ex-EPC employee that EPC had installed and was operating an underground by-pass of its pretreatment facility.  The informant also sent the District a sketch showing the location of the alleged bypass.  

On September 26, 1992, James Waclawik, a pollution control officer, went to EPC pursuant to instructions from District supervisor Allen Giedraitis to investigate the alleged by-pass.  Previously, the 1-A sampling station had been set up as EPC's designated sampling point pursuant to the District's statutory authority.  Station 1-A was physically located underneath a manhole in a pipe under the concrete floor of EPC's building.  The District has a user charge sampling program, which verifies the strength and volume of sewage, industrial waste, and other wastes generated by EPC.  Because Waclawik was aware that the 1-A sampling station may not have been providing an accurate sample of the discharge from EPC, he went to EPC to determine whether a by-pass had been put in the line to avoid the District's official sampling point.  Typically, the District inspected every company that is regulated under the Sewage and Water Control Ordinance, including EPC, at least once a week.

On September 26, 1992, Waclawik knocked on the side door and was admitted into the premises by an EPC employee.  When Waclawik entered the plant, he was directed to the area of the treatment system.  Waclawik proceeded to a manhole, station 1-A, which was the sampling point specifically designated by EPC for inspections.  There, he discovered a suspicious discolored discharge, so he began to investigate.  He encountered Jerry Steward, EPC's maintenance supervisor, who told him that the reason for the discolored discharge was that a valve had been left open by an employee.  Waclawik then traced the discolored discharge beyond station 1-A.

   After the inspection, Waclawik reported his findings to Giedraitis and prepared a report.  He returned to the EPC plant on October 27, 1992, to install a surreptitious probe from station 1A.  When he entered the plant, he told company personnel that he needed to service the automatic sampling equipment at station 1A.  He did not request permission from EPC personnel to install the second probe because he did not want them to know he would be sending a surreptitious probe 24 feet down the sewer line from station 1A.  After he shut down the automatic samplers at station 1A and obtained 99 samples from the surreptitious probe, he noticed that the samples were obviously different than those taken from the immediate area of station 1A.  They appeared to violate the District's Sewage and Waste Control Ordinance.  

Between October 27, 1992, and November 12, 1992, Waclawik and other District personnel returned to the EPC site numerous times to obtain samples from station 1A's surreptitious probe.  Each time, Waclawik was in full District uniform.  Neither the existence of the 24 foot surreptitious probe nor the real reason for its presence was ever revealed to EPC personnel.  He took steps to allay EPC's suspicions, including programming the automatic sampler for an anticipated holiday schedule and stopping his activities when he became aware of being followed by an EPC employee.  Occasionally, his activities were interrupted by the unexpected arrival of EPC employees.  Neither Waclawik nor the other District employees sought or obtained search warrants for any of the visits.  

Waclawik submitted the samples for analysis and reported his findings to his superiors.  Giedraitis directed that EPC not be notified of the covert investigation.  Waclawik and other District employees returned to EPC 10 times over the next two weeks to gather more samples.  On November 10, 1992, a search warrant was issued on the basis of Waclawik's affidavit.

The trial court granted EPC's motion to suppress.  In its February 23, 1996, written order and opinion, the court found that the State's argument, that EPC did not have a reasonable expectation of privacy in the wastewaters, was irrelevant because the minimized privacy interests of commercial establishments are taken into account in the administrative search exception to the warrant clause.  The court ruled that EPC had a sufficient expectation of privacy to trigger the protection of the fourth amendment.  

The court also determined that the District's warrantless search did not fall under any of the recognized exceptions of the warrant requirement.  The court decided that the 
Colonnade-Biswell
 doctrine, which permits warrantless administrative searches of pervasively regulated industries, did not apply because the electronic plating industry is not pervasively regulated.  In addition, the court held that the ordinance permitting the inspections does not authorize or justify warrantless searches because it does not specifically limit the time, place, and scope of the administrative searches.  Finally, the court stated that the District acted unreasonably by using its administrative authority to conduct a criminal investigation.  The court did not find the ordinance unconstitutional.  

The issue is whether the motion to suppress was improper.  The facts and credibility of the witnesses are not at issue because the relevant evidence of what actually occurred was not disputed.  Therefore, it is a question of law whether a motion to suppress should be granted, and this court will consider the question 
de novo
.  
People v. Abney
, 81 Ill. 2d 159, 168, 407 N.E.2d 543 (1980); 
People v. Patterson
, 267 Ill. App. 3d 933, 940, 642 N.E.2d 866 (1994).

The record shows that there is no dispute about the nature and purpose of the District's inspections.  While conducting routine maintenance of the automatic sampler installed at station 1A, the District was at the same time investigating anonymous criminal allegations by collecting evidence from a different sampling point, which was intentionally concealed by the District.  Because the samples were taken automatically in small increments, the District was able to collect samples 24 hours a day.

We must first determine whether the District's actions constituted a search and seizure under the fourth amendment.  If a fourth amendment search and seizure occurred, a warrant was required unless an exception applies.  If this case involves a closely regulated industry, the warrantless inspection would be reasonable under the administrative inspection exception if three criteria were met: (1) the regulation authorizing the inspection must be written pursuant to a substantial government interest; (2) the warrantless inspection must be necessary to further the regulatory scheme; and (3) the statute must provide for a sufficiently regular and certain application as an adequate substitute for a warrant.  
New York v. Burger
, 482 U.S. 691, 701-02, 96 L. Ed. 2d 601, 613-14, 107 S. Ct. 2636, 2643-44 (1987).

The State asserts that we do not have to consider the exception because the fourth amendment does not apply.  The State contends that EPC did not have a reasonable expectation of privacy in the sewer connection searched or a possessory interest in the wastewaters seized.  The State characterizes the premises searched as the connection to the public sewer system under EPC's building, not the building itself.  To support its argument, the State relies on 
Grigoleit, Inc. v. Board of Trustees of Sanitary Dist.
, 233 Ill. App. 3d 606, 611, 599 N.E. 2d 51 (1992), but that case was expressly not a fourth amendment case because there was no actual search.  The State also argues that no seizure occurred pursuant to the fourth amendment because the wastewaters seized had been flushed into the public sewer system.

The fourth amendment, which protects against unreasonable searches and seizures, applies to commercial premises.  
Burger
, 482 U.S. at 699, 96 L. Ed. 2d at 612, 107 S. Ct. at 2642; 
U.S. v. Jacobsen
, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984); 
People v. Janis
, 139 Ill. 2d 300, 309, 565 N.E.2D 633 (1990).  A fourth amendment search occurs when an expectation of privacy that society recognizes as reasonable is infringed.  
Jacobsen
, 466 U.S. at 113, 80 L. Ed. 2d at 94, 104 S. Ct. at 1656.  Although there is no dispute that EPC had a subjective expectation of privacy in its sewer connection, that does not give rise to fourth amendment protection unless society is prepared to recognize that expectation as objectively reasonable.  
California v Greenwood
, 486 U.S. 35, 39-40, 100 L. Ed. 2d 30, 36, 108 S. Ct. 1625, 1628 (1988); 
Jacobsen
, 466 U.S. at 113, 80 L. Ed. 2d at 94, 104 S. Ct. at 1656; 
Janis
, 139 Ill. 2d at 309.  Whether a search is reasonable depends on the facts and circumstances giving rise to the search as well as the nature of the search itself.  
King v. Ryan
, 153 Ill. 2d 449, 457, 607 N.E.2d 154 (1992).  If the inspection does not intrude on a legitimate expectation of privacy, there is no search subject to a search warrant.  
Illinois v. Andreas
, 462 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324 (1983).  The determination must be made by balancing the intrusion on the fourth amendment privacy interests against the promotion of legitimate governmental interests.  
Delaware v. Prouse
, 440 U.S. 648, 654, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396 (1979).   In this case, we do not think that EPC had an objectively reasonable expectation of privacy in the wastewaters contained in the sewer connection that was searched.  Therefore, there was no search subject to a search warrant.  
Andreas
, 462 U.S. at 771, 77 L. Ed. 2d at 1010, 103 S. Ct. at 3324.  Not only does the owner of commercial premises in a closely regulated industry have a reduced expectation of privacy (
Burger
, 482 U.S. at 702, 96 L. Ed. 2d at 613, 107 S. Ct. at 2643), but there is a strong public policy against water pollution.  70 ILCS 405/2(c) (West 1994).

A system for waste disposal and sewage treatment has long been regarded as necessary for public health.  
Chicago Allis Mfg. Corp. v. Metropolitan Sanitary Dist.
, 52 Ill. 2d 320, 324, 288 N.E.2d 436 (1972).  Industrial wastes impose a special burden on the District's facilities in comparison with residential wastes, and the disposal of waste obviously poses a potential hazard to public health.  
Chicago Allis Mfg. Corp.
, 52 Ill. 2d at 324.  The provisions of the Sewage and Waste Control Ordinance are designed to deter anyone from introducing contaminants into the public sewer system by providing a system for monitoring the user's waste discharges.  

When EPC discharges industrial wastewaters into the public sewer system, it is subject to the provisions of the Metropolitan Water Reclamation District Act (70 ILCS 2605/1 
et seq.
 (West 1994)) and the Metropolitan Water Reclamation District of Greater Chicago Sewage and Waste Control Ordinance.  Article I of the ordinance provides that its purpose is "the protection of the public health and safety," which is carried out by "abating and preventing pollution through the regulation and control of the quantity and quality of sewage, industrial wastes, and other wastes admitted or discharged into the sewerage treatment facilities and waters under the District's jurisdiction."  

EPC was entitled to use the public sewer system on a permissive basis only.  As a general rule, a permit to connect to public sewers is in the nature of a license only and
 does not create a vested right in such a connection.  
La Salle National Bank & Trust Co. v. City of Chicago
, 128 Ill. App. 3d 656, 665, 470 N.E.2d 1239 (1984).  Permission to use the public sewer system was conditioned on compliance with the Act and ordinance, which requires EPC to provide the District with sampling stations.  Although the District sampled wastewaters 24 feet from station 1A, a location farther than the immediate area of the designated sampling station, station 1A, we do not find the additional sampling to be unreasonable.  EPC was required to allow the District to take samples from a designated control manhole during reasonable hours, and the District took samples from the designated control manhole using a probe 24 feet downstream inserted from station 1A in the same sewer line as station 1A.   

Given the purpose of the ordinance, EPC did not have an objectively reasonable expectation of privacy in the sewer connection below its property.  One who discharges waste into the public sewer system cannot have an objectively reasonable expectation of privacy in the pipe through which those discharges flow.  Wastewater discharges by EPC "constitute a series of acts performed upon land in which it possesses no estate or interest." 
Grigoleit, Inc. v. Board of Trustees
, 233 Ill. App.3d 606, 612.  To be permitted to use the public sewer system, the user must allow the District to periodically sample the wastewater discharges emanating from its premises.  The District acted in accordance with the purposes of the ordinance.  To enforce the purposes of the ordinance, the District must be allowed to monitor a user's wastewater discharges from a point on the user's premises before those discharges commingle with the discharges of other users.  Subsections 1 and 2, Article IV, MWRD Sewage and Waste Control Ordinance.      

The sewer connection in this case differs from the search of the dumpster in 
Commonwealth v. Krisco Corp.
, 421 Mass. 37, 653 N.E.2d 579 (1995), one of the cases on which EPC relies.  In 
Krisco Corp.
, the dumpster was located in an alley adjacent to the business behind closed gates and was intended for the exclusive use of the business.  
Krisco Corp.
, 421 Mass. 37.  While the expectation of privacy in the dumpster was objectively reasonable by society's standards, EPC's expectation of privacy in the sewer connection was not objectively reasonable.  If EPC's pipe had never been connected to the public sewer system, EPC would have had an objectively reasonable expectation of privacy in the pipe and its contents.  However, once EPC's pipe was connected to the District's public sewer system, any expectation of privacy in the wastewater discharge contained in that pipe became objectively unreasonable.  The wastewaters flushed into the pipe became a part of the public sewer system.  

We also find that a fourth amendment seizure did not occur because there was no meaningful interference with EPC's possessory interests in the wastewaters seized.  
Soldal v. Cook County
, 506 U.S. 56, 61, 121 L. Ed. 2d 450, 458, 113 S. Ct. 538, 543 (1992).  EPC did not have a possessory interest in the wastewaters that was irretrievably discharged into the public sewer system.  Once the wastewaters entered the sewer pipe, it no longer was possessed by EPC.  The wastewaters being discharged through the sewer pipes can be compared to the trash left for collection in 
Greenwood
, 486 U.S. at 39-40, 100 L. Ed. 2d at 36-37, 108 S. Ct. at 1628-29.  Although the wastewaters was not visible to the public in the same way as the trash was, EPC sufficiently exposed the wastewaters to the public to defeat its claim to fourth amendment protection.  
Greenwood
, 486 U.S. at 40, 100 L. Ed. 2d at 36, 108 S. Ct. at 1628.  There is no seizure to invoke constitutional protection if one voluntarily transfers any possessory interest he may have had in the property.  
Maryland v. Macon
, 472 U.S. 463, 469, 105 S. Ct. 2778, 86 L.Ed. 2d 370 (1985).  

As stated in 
Greenwood
, "an expectation of privacy does not give rise to Fourth Amendment protection unless society is prepared to accept that expectation as objectively reasonable." 
Greenwood
, 486 U.S. at 39-40, 100 L.E.2d at 36, 108 S.Ct. at 1628.  In 
Greenwood
, the court concluded that the defendants exposed their garbage to the public sufficiently to defeat their claim to fourth amendment protection.  The 
Greenwood
 court reasoned that defendants, "having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' [cite omitted] respondents could have no reasonable expectation of privacy in the inculpatory items that they discarded."  
Greenwood
, 486 U.S. at 40-41, 100, L. Ed. 2d at 36-37, 108 S. Ct. at 1628-29.

Just as the plastic garbage bags left on the side of a public street were readily accessible to members of the public, the wastewaters were readily accessible to the public sewer system as soon as they were discharged.  Having deposited the wastewaters in an area particularly suited for public inspection for the express purpose of having strangers take it, EPC could have had no reasonable expectation of privacy in the wastewaters that it discarded.  
Greenwood
, 486 U.S. at 40-41, 100 L. Ed. 2d at 36-37, 108 S. Ct. at 1628-29.  As a result, the District's collection of the wastewaters was not a seizure for the purposes of the fourth amendment.  

Because there was no fourth amendment search or seizure, we need not consider the administrative inspection exception of the warrant clause.  Accordingly, we reverse the circuit court's judgment and remand this cause for further proceedings.   

Reversed and remanded.

McNamara, J., and Burke, J., concur.