VICTOR M. WINSTON, a Minor by his Mother and Next Friend, Fannie Magee, Plaintiff-Appellant, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   1—88—0524

Opinion filed April 10, 1989.

Donald Hubert & Associates, of Chicago (Donald Hubert and Philip J. Fowler, of counsel), for appellant.

Heineke, Burke, Healy & Bodach, of Chicago (L. Barrett Bodach and Mary Beth O'Brien, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Victor M. Winston, appeals from the finding of a directed verdict in favor of defendant, the Board of Education of the City of Chicago, in a personal injury action.

The minor plaintiff, age five, by his mother and next friend, Fannie Magee, filed an action on February 24, 1976, against the defendant Board of Education to recover damages for severe and permanent injuries he sustained when he was hit by a car shortly after noon on March 8, 1974, in an intersection adjacent to the Anthony Overton public school in Chicago, where he was a kindergartener. In his three-count complaint, the plaintiff also sued the police department of the City of Chicago and the automobile driver, Lonnie Davis. The complaint alleged that the plaintiff, a pedestrian, was near the intersection of 50th and Indiana Avenue in Chicago when he was struck by the defendant driver, and a negligence cause of action was alleged against Davis. A negligent failure to safely guard the intersection was also alleged against the police department of the City of Chicago. On August 10, 1976, the trial court granted the motion of the defendant Board of Education to dismiss plaintiff's complaint for failure to state a cause of action, but ordered that the case would continue against the remaining defendants, the City of Chicago and Lonnie Davis. On August 16, 1985, a settlement order was entered which provided that the City of Chicago would pay plaintiff $2,500. On January 30, 1986, a default judgment was proved up against the defendant, Lonnie Davis, in the amount of $875,000.

On November 6, 1985, approximately nine years after the filing of the original complaint, the plaintiff filed a second amended complaint against the Board of Education. On April 17, 1986, the trial court de-

nied the Board of Education's motion to dismiss plaintiff's second amended complaint. The second amended complaint alleged that the defendant Board of Education knew that the school rule to cross at the intersection of 49th and Indiana Avenue went unheeded by students; that the defendant knew that Indiana Avenue, due to its width, volume and speed of traffic would be highly dangerous for a five-year-old to cross without assistance, that the defendant knew that other children had, in fact, been struck by motor vehicles when going to and from the Anthony Overton School; that the defendant engaged in wilful and wanton behavior by discharging the five-year-old plaintiff, knowing his trip home would be unsupervised and he would cross the highly traveled Indiana Avenue; that the defendant failed to require of parents or guardians that all pupils of the age and experience of plaintiff be accompanied home by a person of sufficient age and experience; and, finally, that the defendant failed to station patrols or teachers on school grounds in order to direct pupils away from crossing Indiana Avenue other than at the guarded intersection.

The case proceeded to trial from October 21, 1987, through October 28, 1987, at which time the plaintiff rested his case. Subsequently, the trial court granted defendant's motion for a directed verdict and plaintiff now appeals.

Plaintiff contends on appeal that the Board of Education owes a duty of protection and supervision to a five-year-old kindergarten child on school premises even where that child is injured in a street intersection adjacent to the school and not on school property. Plaintiff maintains this is especially applicable to this case since the school policy required that the school would retain control of kindergarteners until a parent arrived to pick them up or parental permission is given to allow the child to go home alone.

In *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 394 N.E.2d 452, the plaintiff student complained that several of her classmates had threatened her with physical harm unless she made payments of money to them. The plaintiff had advised the teacher of the threats. Thereafter, the teacher accompanied her class to the bathroom. The teacher remained in the hallway adjacent to the bathroom while the student entered it. While the plaintiff was inside the bathroom, she was physically assaulted by a group of her classmates. The plaintiff brought an action against the Board of Education to recover for her injuries. This court held that plaintiff's complaint did not state a cause of action since the Board of Education had not engaged in wilful and wanton misconduct. The court reiterated the well-recognized principle and definition of wilful and wanton miscon-

duct as set out in *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 69 N.E.2d 293:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." (394 Ill. at 583, 69 N.E.2d at 300.)

In *Booker,* the court concluded that since there were no allegations that the teacher had knowledge of an impending danger to the plaintiff if she entered the bathroom unaccompanied by a teacher, the cause of action must fail. The court further stated that in order to state a cause of action for wilful and wanton misconduct, the plaintiff must allege facts which give rise to a duty in the law on the part of the defendant and that the intentional breach of that duty resulted in plaintiff's injury. The mere conclusion of wilful and wanton misconduct is insufficient.

█ In the case at bar, the plaintiff was permitted to file a second amended complaint approximately nine years following the filing of his original complaint. In making a ruling directing a verdict in favor of the defendant, the trial judge stated, in part, that he permitted the case to go to the jury because of allegations in the complaint that it was well known that other children had been struck by motor vehicles crossing Indiana Avenue upon coming or leaving the Overton School. At trial, however, plaintiff failed to provide any evidence to support this allegation. We have reviewed the record in this matter and are in agreement with the trial court's finding that the evidence was lacking to support a charge of wilful and wanton misconduct and find no error in the granting of a directed verdict for defendant. *Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 529 N.E.2d 303.

At trial, Victor Winston's mother, Fannie Magee, testified that she would walk her son to and from school, or would allow his cousin, Anthony Quinn, to do so. On the date of the incident, March 8, 1974, Anthony Quinn brought Victor Winston to school and agreed with his mother to pick him up after school. Since Anthony Quinn is now deceased, there was no evidence presented as to whether, in fact, he did pick up the child. No witnesses testified as to the actual occurrence and no evidence was admitted as to the factual circumstances of the impact between the automobile involved and the child. Under these circumstances, plaintiff has failed to establish a *prima facie* case of

wilful and wanton misconduct. *Booker,* 75 Ill. App. 3d 381, 394 N.E.2d 452.

Plaintiff cites the case of *Ballard v. Polly* (D.D.C. 1975), 387 F. Supp. 895, a case decided outside of this jurisdiction, in support of its position. In *Ballard,* a five-year-old kindergarten child was struck by a motor vehicle after wandering off a public school playground through a gap in a fence. The accident occurred while the children were participating in an afternoon recess in a playground area and the children were under the supervision of teachers. The gap in the fence through which plaintiff exited the playground had been present for several months before the occurrence. The principal of the school considered the street dangerous enough to conclude that a crossing guard should have been placed at the intersection where the accident occurred. The court held that it was foreseeable that the children could wander into the street and be struck by vehicles and, therefore, the school had a duty to protect them against this hazard. In reaching its decision, the court was careful to caution that a school is not an absolute insurer of the safety of a pupil and that each case must be decided on its own facts.

In our judgment, *Ballard* is readily distinguishable from the case before us. In *Ballard,* the plaintiff child was participating in playground activities under the supervision of school authorities unlike the instant case, where plaintiff had been dismissed from school at the time of the incident. Further, the *Ballard* court clearly relied on the fact that the school authorities knew of the hazard and the length of time that the hole in the fence had been present. Likewise, the trial judge here similarly based his decision on the facts as to whether defendant had prior knowledge that a hazard was present and concluded that it did not. Contrary to plaintiff's allegations, no evidence was presented to support his contention that prior accidents had occurred involving children being struck by motor vehicles when crossing Indiana Avenue when coming to or leaving the Anthony Overton School. Nor was any evidence admitted that Indiana Avenue was highly dangerous compared with other streets. Under the facts of this case, we do not find that any duty was owed by the Board of Education to this plaintiff, who was on his way home from school.

■ We recognize that the right to have a substantial factual dispute resolved by a jury is constitutional and should be carefully preserved by judges. (*Chladek v. Albon* (1987), 161 Ill. App. 3d 884, 515 N.E.2d 191.) A verdict, however, may be directed in favor of a moving party when all the evidence, viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the moving party that

no contrary verdict based upon the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In applying the *Pedrick* standard to the case at bar, we agree with the trial court's determination that since no duty was raised by the plaintiff and no *prima facie* case was established, no triable issue existed for the jury to consider and a directed verdict was warranted.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and QUINLAN,* J., concur.

---

*Justice Quinlan participated in this opinion prior to his assignment to the sixth division.