DINA MUELLMAN, Plaintiff-Appellee, v. THE CHICAGO PARK DIS-
TRICT, Defendant-Appellant.

First District (1st Division)   No. 1—90—1458

Opinion filed August 24, 1992.

Donald J. Suriano, of Chicago Park District, and Paul Stephanides, both of Chicago, for appellant.

Patrick J. Moran, of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from an action brought by plaintiff Dina Muellman to recover damages for injuries she sustained when she

stepped into an open pipe. Plaintiff alleged that defendant Chicago Park District's willful and wanton conduct resulted in her being injured. Judgment was entered in favor of plaintiff. Defendant now appeals.

Plaintiff's original complaint was stricken for failure to plead willful and wanton conduct against defendant. Plaintiff filed a first-amended complaint containing three counts. The circuit court struck counts I and III. In remaining count II, plaintiff alleged that defendant willfully and wantonly (1) failed to inspect drains, (2) removed a drain cover, (3) failed to replace the drain cover, and (4) failed to barricade the area or prohibit people from using the area.

During the bench trial, plaintiff called occurrence witnesses, Kevin O'Brien and Robert Hall, who had accompanied her to an outdoor concert in Grant Park. Their testimony corroborated plaintiff's.

Plaintiff testified that on June 7, 1985, at approximately 6:15 p.m., she, her sister, O'Brien and Hall entered Grant Park at Balbo Street to attend the Blues Festival, which was being held at the band shell about two blocks north of where they entered. There was a crowd of people walking in the same path across the park. There were no signs, fences or chains prohibiting people from walking along that path. In this area there were shut off valves which were about $3\frac{1}{2}$ inches in diameter and protruding approximately one to two inches above the ground. The shut off valves (hereinafter referred to as pipes) customarily had a metal cover bolted to the top.

Plaintiff testified that while walking in the park toward the band shell, she stepped into an uncovered pipe, causing her to fall and fracture her ankle. Since the grass around the pipe was about four to five inches high, the pipe was concealed.

In addition to corroborating plaintiff's testimony, Hall, who was a stationary engineer and familiar with cast iron pipes, testified without objection that there was no lid on the pipe and that it was rusty colored. Further, Hall opined, based on his experience, that the pipe had been uncovered for more than one month.

Ronald Kruml, a labor foreman for defendant, testified that the grass in Grant Park was never cut to less than $2\frac{1}{2}$ inches high. Kruml stated that the pipe lids can be removed by merely unscrewing a bolt. Kruml also testified that there was no planned program for inspecting the lids. Additionally, Kruml explained that when mowing the grass, the lids to the pipes could be knocked off; therefore, he and a few other men painted some of the pipes yellow and orange. However, Kruml and those men painted only those pipes which they felt could damage defendant's mowing equipment. Kruml testified that

when choosing the pipes to paint, defendant was not concerned about the pipes which were closer to the ground where people might trip over them.

William Cotton testified that at the time plaintiff sustained her injury, he was defendant's supervisor of lawn maintenance, garbage removal and beach sanitation. Cotton testified that it was common knowledge of defendant's personnel that the lids of the pipes were being stolen. Cotton also testified that defendant did not have any policies regarding the inspection of these pipes. Further, Cotton stated that the pipes had not been used in 26 years.

After the bench trial, defendant moved for a directed verdict. The circuit court denied the motion. Thereafter, the circuit court judge rendered a verdict in favor of plaintiff in the amount of $8,500 plus costs. The circuit court judge found that plaintiff was not contributorily negligent. The circuit court also denied defendant's motion for reconsideration. Defendant appeals the denial of the above motions and the judgment order.

■ Plaintiff was injured on a pipe located in Grant Park, which is maintained by defendant as a recreational property under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1987, ch. 85, par. 3—106). Under section 3—106 of the Act, a local public entity cannot be held liable "where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks *** unless such local entity *** is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1987, ch. 85, par. 3—106.

■ Defendant is a local public entity within the meaning of section 1—206. (See Ill. Rev. Stat. 1987, ch. 85, par. 1—206.) Willful and wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." Ill. Rev. Stat. 1987, ch. 85, par. 1—210.

As stated, defendant appeals the judgment order and the denial of its directed verdict. The arguments pertaining to the judgment and the directed verdict are treated together in the paragraphs below.

Relying on *Pinto v. DeMunnick* (1988), 168 Ill. App. 3d 771, 523 N.E.2d 47, and *Palermo v. City of Chicago Heights* (1971), 2 Ill. App. 3d 1004, 276 N.E.2d 470, defendant argues that plaintiff presented no evidence of willful and wanton conduct. These cases are distinguishable from the instant case. In *Pinto,* the plaintiff was injured when she fell in a hole located in the parkway. The plaintiff argued that the

village should have inspected its parkways for holes. The village argued that the plaintiff did not establish that it had notice of the hole. (*Pinto*, 168 Ill. App. 3d at 774, 523 N.E.2d at 49.) In *Palmero*, the plaintiff fell on a meter box which extended 1½ inches above the ground due to the box's cover being loosely attached. The court ruled that where the condition had existed only for two to four weeks and the cover was not plainly visible, the city did not have constructive notice. *Palmero*, 2 Ill. App. 3d at 1008, 276 N.E.2d at 473.

In the instant case, not only did defendant know that the pipes existed, defendant was aware and acknowledged the danger of pipes protruding from the ground by painting them so machine operators could readily see and avoid the pipes. Defendant, however, consciously disregarded the safety of the general public by painting only those pipes which it determined could damage defendant's equipment. Moreover, an employee of defendant testified that it was common knowledge among defendant's personnel that pipe lids were being stolen. In addition, a witness testified without objection that in his opinion the particular pipe which caused plaintiff's injury had its lid missing for at least one month.

■■ The law in Illinois pertaining to directed verdicts and review of judgment orders is well settled. A verdict may be directed in favor of a movant if the evidence, when viewed in a light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based upon the evidence could ever stand. (*Winston v. Board of Education* (1989), 182 Ill. App. 3d 135, 139-40, 537 N.E.2d 964, 967.) Illinois law concerning the review of judgments is that judgment rendered in a bench trial will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Ruggio v. Ditkowsky* (1986), 147 Ill. App. 3d 638, 642, 498 N.E.2d 747, 750.) Defendant, thus, when appealing a judgment order must present evidence that is so strong and convincing as to overcome completely the evidence in plaintiff's favor. (*Ruggio*, 147 Ill. App. 3d at 642, 498 N.E.2d at 750.) We find that the evidence at trial proved that defendant's willful and wanton conduct caused her injury. The circuit court, therefore, properly denied defendant's motion for a directed verdict and the judgment order was not against the manifest weight of the evidence.

■■ Lastly, defendant argues that the circuit court erroneously found that plaintiff was not contributorily negligent. The Illinois Supreme Court recently addressed the issue of whether a plaintiff's negligence can be compared with the willful and wanton conduct of a defendant, even if the defendant is protected by the Act. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d

522.) The Illinois Supreme Court held that a plaintiff's negligence cannot be compared with a defendant's willful and wanton conduct. (*Burke*, 148 Ill. 2d at 451-52, 593 N.E.2d at 532.) Defendant's argument, thus, is meritless.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.