TERESA DUNBAR, Plaintiff-Appellant, v. THRYLL LATTING, Indiv. and d/b/a Latting Rodeo Productions *et al.*, Defendants-Appellees.—JIMMY CUNNINGHAM *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF HOPKINS PARK *et al.*, Defendants-Appellees.

Third District   Nos. 3—92—0940, 3—92—0961 cons.

Opinion filed September 14, 1993.

Fred I. Benjamin, of Benjamin & Shapiro, Ltd., of Chicago (Paul R. Kesselman, of counsel), for appellant Teresa Dunbar.

Copeland, Finn & Fieri, of Chicago (Michael P. Hendrickson, of counsel), for appellants Jimmy Cunningham and Lucille Cunningham.

Karen L. Kendall and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria, and Heyl, Royster, Voelker & Allen, of Urbana (Michael E. Raub, of counsel), for appellee Thryll Latting.

Modesto, Reynolds & McDermott, of Chicago (William E. Hoversen, Jr., of counsel), for appellee Village of Hopkins Park.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiffs Jimmy and Lucille Cunningham filed a complaint alleging that they were injured by defendants' negligence when bleachers they were sitting on collapsed at a rodeo. Plaintiff Teresa Dunbar also filed a complaint alleging that she was injured in the same bleacher incident. The cases were consolidated by the trial court, and we will refer to the Cunninghams and Dunbar collectively as plaintiffs. Plaintiffs appeal from an order which granted summary judgment in favor of two of the defendants, Thryll Latting, d/b/a Latting Rodeo Productions (Latting Rodeo), and the Village of Hopkins Park (Village).

Plaintiffs raise two issues on appeal: (1) whether the trial court erred in granting summary judgment in favor of the Village because, as it owned the park where the rodeo was held, it had a duty to maintain the property in a reasonably safe condition; and (2) whether the trial court erred in granting summary judgment in favor of Latting Rodeo because, as the producer of the rodeo, it had a duty to provide safe seating for spectators at the rodeo. After considering the plaintiffs' arguments, we affirm the trial court based upon our review of the record.

On May 24, 1987, plaintiffs attended a rodeo which was held in a park located in the Village. The bleachers they were sitting on collapsed, and plaintiffs suffered injuries. Plaintiffs filed complaints against Pembroke Rough Riders Rodeo (Pembroke), Latting Rodeo, and the Village. The Cunninghams also named Pembroke Township as

a defendant. On March 9, 1989, an order was entered in the Dunbar case which stated that Pembroke was held in default. Later, on October 16, 1990, the trial court consolidated the two cases. On December 19, 1991, the Cunninghams voluntarily dismissed Pembroke Township from the action with prejudice. We note that neither Pembroke nor Pembroke Township is a party to this appeal.

Both the Village and Latting Rodeo filed motions for summary judgment. The Village contended that it was entitled to summary judgment because it did not own, manage or maintain the bleachers in question. In its motion, Latting Rodeo contended that it was involved in the rodeo only to the extent of its contractual obligations with Pembroke. Under the terms of this agreement, Latting Rodeo had no responsibility for the design, construction and maintenance of the bleachers.

Plaintiffs filed responses to the motions for summary judgment. The Cunninghams noted that the Village had liability insurance at the time of their injuries. They thus contended that the protections of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 et seq.) did not apply. The Village filed a reply in which it argued that the Tort Immunity Act had been amended and therefore did apply even though the Village had liability insurance. It also argued that, pursuant to section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 3—106), plaintiffs had to plead and prove that the proximate cause of their injuries was the Village's willful and wanton conduct. The Village contended that there was no evidence of willful and wanton conduct. Subsequently, on July 9, 1992, the Village filed an amended answer to Dunbar's first amended complaint and an amended answer to the Cunninghams' complaint. In both amended answers, the Village alleged that, under the Tort Immunity Act, it could not be liable for negligent conduct.

The parties filed various affidavits, documents and deposition excerpts in support of and in opposition to the motions for summary judgment. The facts showed that, since approximately 1978, a rodeo was held on the Village's property each Memorial Day weekend. The park where the rodeo was held was known as "Rodeo Park." In one area of the park there was some playground equipment and a ball field. There were no permanent structures in the area where the rodeo was held. The bleachers, corrals and fences needed for the rodeo were erected and dismantled each year before and after the rodeo. This particular year, the wooden bleachers which were used by spectators were constructed and installed by Griffin Lumber Company (Grif-

fin), a local company located in the Village. Plaintiffs did not name Griffin as a defendant in their complaints.

In 1987 and prior years, the Village entered into an agreement with Pembroke. Pembroke was essentially responsible for putting on the rodeo. Under the agreement, Pembroke agreed: (1) to carry liability insurance; (2) to obtain a liquor license; (3) to pay prevailing wages for security and use Village auxiliary police; (4) to be completely responsible for cleaning up the park after the rodeo; and (5) to make a donation of $400 to the Village's "Emergency Assistance Fund." However, Pembroke did not have liability insurance coverage at the time plaintiffs were injured. The Village's mayor testified in his deposition that the Village's only responsibility under the agreement was to provide traffic control. The Village did not require Pembroke to provide proof that it had liability insurance coverage. Also, the Village did not inspect the bleachers or any of the other structures. Prior to the plaintiffs' injuries in 1987, no one had been injured at the annual rodeo.

In 1987, Pembroke also entered into an agreement with Latting Rodeo. Under the terms of this agreement, Latting Rodeo was to provide a portable arena including a fence and bucking chutes, all personnel including cowboys and an announcer, and all animals and handlers to be used in the rodeo. Latting Rodeo was paid a fee for these services which was not related to ticket sales. Pembroke was responsible for selling the tickets to the rodeo. Latting Rodeo had nothing to do with the construction of the bleachers. The evidence presented showed that the animals and personnel provided by Latting Rodeo did not come into contact with the bleachers and did not cause the collapse of the bleachers.

A hearing was held regarding the summary judgment motions, and the Village argued that it was entitled to the protections provided by the Tort Immunity Act "in the use of land for recreational purposes." An order was later entered on November 19, 1992. The court granted both motions for summary judgment. The court found that neither Latting Rodeo nor the Village had control over the bleachers which allegedly collapsed so that neither of these defendants owed plaintiffs a duty of care. The court's order stated that no just cause existed to delay enforcement or appeal of the order pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Thereafter, plaintiffs filed timely notices of appeal.

On appeal, plaintiffs argue that summary judgment should not have been granted. They contend that the facts presented to the trial

court were adequate to show that both the Village and Latting Rodeo had a duty to plaintiffs.

Summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 165, 568 N.E.2d 827, 832; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) "The sole function of the court reviewing the trial court's entry of summary judgment is to determine whether the lower court correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered as a matter of law." *Lavat v. Fruin Colnon Corp.* (1992), 232 Ill. App. 3d 1013, 1023, 597 N.E.2d 888, 894.

In this case, plaintiffs have alleged a cause of action based upon negligence. To properly state a cause of action for negligence, a plaintiff must establish that the defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421, 592 N.E.2d 1098, 1100.) Whether or not a duty of care exists is a question of law to be determined by the court and thus may be determined on a motion for summary judgment. (*Wojdyla*, 148 Ill. 2d at 421, 592 N.E.2d at 1100.) On appeal, a trial court's determination whether a duty exists is subject to *de novo* review. *Wolowinski v. City of Chicago* (1992), 238 Ill. App. 3d 639, 641, 606 N.E.2d 273, 274.

Here, there is no real dispute regarding the facts. The only issue is whether, under the facts presented to the trial court, either the Village or Latting Rodeo had a duty to plaintiffs. We find that this issue is properly subject to *de novo* review.

Plaintiffs first argue that summary judgment should not have been granted for the Village. They argue that there is no dispute that the Village owned the property where the rodeo was held. The Cunninghams therefore contend that the Village had a duty, pursuant to section 3—102(a) of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a)), to maintain its property in a reasonably safe condition. Dunbar argues that the Tort Immunity Act does not apply because it is undisputed "that the Village maintained an insurance policy to cover persons injured while on Village property." Dunbar contends, however, that the Village breached its duty when no one from the Village supervised the installation of the bleachers on its property or inspected the bleachers to ensure they were safe. Dunbar also contends that the Village is liable because it failed "to make sure that those organizing the Rodeo were properly insured."

Initially, we note that section 9—103 of the Tort Immunity Act was amended in 1986 to allow local public entities to acquire commercial liability insurance without waiving their immunities under the Act. (*Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.* (1992), 229 Ill. App. 3d 413, 420, 593 N.E.2d 1087, 1092.) Therefore, contrary to Dunbar's contention, the Tort Immunity Act does apply to this action even though the Village had liability insurance. Ill. Rev. Stat. 1991, ch. 85, par. 9—103(c).

The Cunninghams rely on section 3—102(a) of the Tort Immunity Act, which provides, in pertinent part:

> "*Except as otherwise provided in this Article,* a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition ***.*"* (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a).)

Section 3—106 of the Tort Immunity Act, however, provides otherwise when the property in question is recreational property. The record shows there is no dispute that the park where the rodeo was held was recreational property.

Under section 3—106 of the Tort Immunity Act, a local public entity is not liable for any injury resulting from a condition on public property intended or permitted to be used for recreational purposes unless the local public entity is guilty of willful and wanton conduct which proximately caused the injury. (Ill. Rev. Stat. 1991, ch. 85, par. 3—106; *Barrett v. Forest Preserve District* (1992), 228 Ill. App. 3d 975, 978, 593 N.E.2d 990, 992.) The purpose of this legislation is to encourage the development and maintenance of parks, playgrounds and similar areas. *John v. City of Macomb* (1992), 232 Ill. App. 3d 877, 879, 596 N.E.2d 1254, 1256.

The Village did not base its motion for summary judgment on section 3—106. However, after the motion was filed, it did argue before the trial court that there was no evidence that it engaged in willful and wanton conduct. The Village thus contended that it could not be liable to plaintiffs based upon section 3—106 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 3—106). We agree with plaintiffs that this was not the basis of the trial court's ruling. However, we do not agree with plaintiffs that this issue must be considered waived and cannot be considered on appeal.

Summary judgment may be affirmed on *any* grounds supported by the record regardless of whether the trial court relied on those grounds or whether the reasoning of the trial court was correct. (*Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.* (1992), 229 Ill. App. 3d 413, 417, 593 N.E.2d 1087, 1089.) A reviewing

court will consider all grounds urged and facts revealed in the trial court when determining the propriety of the entry of summary judgment. *Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013, 1016, 576 N.E.2d 168, 171.

■ Because the record shows that the property involved in this action is recreational property, we conclude that section 3—106 applies to this case. Thus, the Village can be liable *only* if it engaged in willful and wanton conduct which proximately caused plaintiffs' injuries. The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (Ill. Rev. Stat. 1991, ch. 85, par. 1—210.) Our supreme court recently determined that there is a qualitative difference between negligence and willful and wanton conduct. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 450, 593 N.E.2d 522, 531.) The court noted that willful and wanton conduct approaches the degree of blame associated with intentional harm because the defendant *deliberately* inflicts a highly unreasonable risk of harm upon others in conscious disregard of that risk. *Burke*, 148 Ill. 2d at 448, 593 N.E.2d at 530.

Willful and wanton conduct may be found to exist where the local public entity takes no action to correct a condition even though it was informed about the dangerous condition and knew that other persons had previously been injured because of the dangerous condition. (See *Straub v. City of Mt. Olive* (1993), 240 Ill. App. 3d 967, 979-80, 607 N.E.2d 672, 680-81.) Also, a local public entity may be found to have engaged in willful and wanton conduct when it intentionally removes a safety feature from its recreational property. (See *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 559-60, 578 N.E.2d 600, 603-04.) However, where there are no facts or allegations to show that the local public entity engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition, the conduct of the local public entity does not rise to the level of willful and wanton conduct. See *Brown v. Chicago Park District* (1991), 220 Ill. App. 3d 940, 944-45, 581 N.E.2d 355, 359.

Here, plaintiffs have not argued that the Village engaged in any intentional conduct. Also, there were no facts presented to show that the Village knew of any dangerous condition or any previous injuries. In fact, the undisputed facts show that, although Pembroke had staged a rodeo on the Village's property for years, there were no prior injuries or problems with unsafe bleachers. Under these circumstances, while the Village's failure to inspect the bleachers may have

been negligent, it cannot be considered willful and wanton conduct. Summary judgment is properly granted where the acts of the local public entity cannot be characterized as willful and wanton conduct. *Foley v. City of La Salle* (1993), 241 Ill. App. 3d 54, 58, 608 N.E.2d 964, 966.

■ We also disagree with Dunbar's argument that the Village is subject to liability based upon its failure to ensure that Pembroke had liability insurance. Under section 3—106, the Village is not liable for plaintiffs' injuries unless it was "guilty of willful and wanton conduct *proximately causing such injury.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 85, par. 3—106.) Even if we were to assume that the Village's failure to obtain proof of insurance could be considered willful and wanton conduct, this failure could not have been the proximate cause of plaintiffs' injuries. The cause of an injury is that which actually produces it. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383, 609 N.E.2d 290, 294.) Plaintiffs' injuries were caused by the collapse of the bleachers, not by the Village's failure to obtain proof that Pembroke had liability insurance.

■ At oral argument, Dunbar also argued that the immunity provided by section 3—106 does not apply because putting on a rodeo is not a governmental function. This argument has no merit. Even if we agreed with Dunbar that the act of presenting a rodeo to the public is not a governmental function, the facts here show that the Village did not put on the rodeo. The Village merely provided Pembroke with the recreational property on which to present the rodeo. Providing a playground or other recreational property is a governmental activity. (See *Davis v. Chicago Housing Authority* (1990), 136 Ill. 2d 296, 301, 555 N.E.2d 343, 345.) Because we have concluded that section 3—106 of the Tort Immunity Act applies to plaintiffs' action against the Village and because the facts presented do not show any willful and wanton conduct on the part of the Village, we conclude that summary judgment for the Village was properly entered by the trial court.

Additionally, we note that the Village may arguably be entitled to immunity under section 3—109 of the Tort Immunity Act. This section provides that a local public entity is not liable for injuries to a spectator arising out of a "hazardous recreational activity." (Ill. Rev. Stat. 1991, ch. 85, par. 3—109(a).) The statute specifically includes "rodeo" in its definition of hazardous recreational activity. (Ill. Rev. Stat. 1991, ch. 85, par. 3—109(b)(3).) We merely note this section of the statute in passing because none of the parties discussed this immunity. However, we have not based our decision on this section of the Tort Immunity Act.

Plaintiffs next argue that Latting Rodeo was not entitled to summary judgment. Relying on *Tomlin v. Miller* (1948), 335 Ill. App. 267, 81 N.E.2d 760, they argue that Latting Rodeo was the "rodeo producer" and thus had a duty to furnish a reasonably safe place for plaintiffs and other spectators to view the rodeo. Based on our review of *Tomlin*, we disagree with the plaintiffs and conclude that *Tomlin* is clearly distinguishable.

In *Tomlin*, the defendant held a rodeo on his farm. The defendant charged admission and used his own horses in the rodeo. No seating was provided, and the plaintiff and some of the other spectators stood near the fence around the corral. During the rodeo, a horse jumped the fence. A portion of the fence was dislodged and struck the plaintiff, injuring him. On appeal, the court affirmed a jury verdict for the plaintiff, holding that it was the defendant's duty to exercise ordinary care "in furnishing a reasonably safe place for plaintiff and other spectators to view said rodeo." *Tomlin*, 335 Ill. App. at 271-72.

There are two important factual differences between *Tomlin* and the instant case. In *Tomlin*, the defendant conducted the rodeo on his own property and had full responsibility for the entire performance. Here, the rodeo was held on property owned by the Village, and Pembroke was responsible for putting on the rodeo. Latting Rodeo's responsibilities were set out in its contract with Pembroke. Under the terms of the contract, Latting Rodeo was to provide personnel, animals and a portable arena including a fence and bucking chutes. For these services, Latting Rodeo was paid a flat fee unrelated to ticket sales. It is undisputed that the contract did not require Latting Rodeo to provide seating for the spectators of the rodeo. The facts also show that Latting Rodeo had nothing to do with erecting the bleachers for the rodeo. Based upon these facts, Latting Rodeo, unlike the defendant in *Tomlin*, had no responsibility for providing seating for the rodeo and was not responsible for all aspects of the performance.

Another distinction is that, in *Tomlin*, the plaintiff's injuries occurred when one of the defendant's animals jumped the fence. Here, it is undisputed that plaintiffs' injuries were not caused by the equipment, personnel or animals provided by Latting Rodeo.

■ Plaintiffs assert, however, that Latting Rodeo had a duty to inspect the bleachers. We disagree and conclude that there is no factual or legal basis for imposing a duty on Latting Rodeo to inspect the bleachers because: (1) the bleachers were not located on Latting Rodeo's property; and (2) the contract with Pembroke imposed no responsibility on Latting Rodeo to inspect the bleachers. Therefore, we

agree with Latting Rodeo that summary judgment was properly granted by the trial court.

In sum, following our review of the record, we find that no genuine issue of material fact exists, and we conclude that the trial court, as a matter of law, correctly entered summary judgment in favor of both defendants.

For the reasons indicated, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

SLATER and BRESLIN, JJ., concur.