BRUCE BIALEK, Plaintiff-Appellee, v. MORAINE VALLEY COMMUNITY COLLEGE SCHOOL DISTRICT 524, Defendant-Appellant.

First District (1st Division)    No. 1—92—2237

Opinion filed October 31, 1994.

Law Offices of James J. Desveaux, of Chicago (Jeff Goldberg, of counsel), for appellant.

Cooney & Conway (Robert J. Cooney, Jr., of counsel) and Robert N. Wadington, both of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Moraine Valley Community College School District 524 (Moraine), appeals from a $73,069.12 judgment in favor of plaintiff, Bruce Bialek, finding Moraine engaged in willful and wanton conduct which caused injuries to Bialek.

On October 13, 1985, Bialek, age 25, ran into a goalpost on Moraine's property and suffered severe injuries to his face (broken nose) and groin (lacerated penis and gash in lower abdominal region). At the time, Bialek was playing in a football game with adult friends, including John Zieman and Ed Donnelly. The men were not authorized to use the premises on which they located their game, nor did Moraine supervise the game. Bialek and his friends had driven onto Moraine's Ridgeland campus located at 115th Street and Ridgeland Street in Alsip, Illinois, and set up a field on which to play. The area they chose was not a demarcated football field. It was a field between 2 and 15 acres in size; however, Bialek and his friends chose to play in a corner of the field which contained a single, H-shaped steel goalpost. A metal bracket protruded from one upright of the goalpost. According to both Bialek and his friends, they did not use the goalpost as a goalpost. Rather, they used it as a boundary marker. Although Bialek could not recall seeing the goalpost prior to running into it, he testified that he "must have seen it," and the other players testified that they were aware the post was in their field of play.

At some point during the game, Bialek ran into the post. His friends stated that the accident occurred one hour to an hour and a half into the game. However, according to Bialek, only minutes had elapsed when he collided with the post while running to catch a pass. As he prepared to receive the ball, he turned his head toward the goal and crashed into it face-first. At the same time, his lower abdomen and groin were caught on the metal bracket. He fell to the ground, bleeding. Bialek's friends went to assist him and arranged transport to a nearby hospital, where he underwent treatment for a broken nose. He also received 10 stitches in his penis, numerous stitches in his forehead, and a clamp was used to close the wound to

his abdomen. Bialek stayed in the hospital for three days and returned to work in three weeks.

Subsequently, Bialek filed suit against Moraine. The first count of his amended complaint, alleging negligence, was voluntarily withdrawn because under section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*), local governmental entities are not liable for negligence on their recreational fields. Count II alleged that Moraine was willful and wanton in its maintenance of its campus in that (a) it failed to remove a dangerous condition—the goalpost and bracket—from its premises; (b) it failed to warn Bialek of the presence of the goalpost and bracket; and (c) it failed to pad the goalpost and bracket. The jury at trial was instructed on this theory of the case.

At trial, employees of Moraine, including Eugene Summer, its chief groundskeeper, Lester Peterson, director of public safety, and Joseph Farancak, its campus operations manager at the time, testified. Summer testified that he was responsible for maintaining the field surrounding Moraine's campus. If a dangerous condition existed, it was his responsibility to rectify it. He and his crew did not consider the goalpost to be a dangerous condition and, therefore, never reported or fixed it. He also testified that there were signs posted on the campus informing would-be users of the fields to obtain the college's permission prior to use. Peterson testified that Moraine employed security personnel to remove unauthorized people. Prior to plaintiff, no one had ever complained to the college that the goalpost presented a danger or that it had caused injury. Farancak testified that at Moraine's main campus, the college maintained a football field for organized, supervised football. On this field, the goalposts were padded to protect players who ran into them. However, neither the football team nor the college, in general, used the Ridgeland campus for athletic activities, although at least two independent organizations—the Oak Lawn boys soccer league and a church softball group—had used the field for athletic purposes. Because the field was not generally used for athletic purposes, even if Farancak had been aware of the goalpost and bracket, he might not have ordered its removal or padding.

At the close of plaintiff's case, Moraine moved for a directed finding in its favor. Moraine argued that it owed no duty to Bialek because the goal post was open and obvious and, furthermore, that the evidence failed to establish willful and wanton conduct because the school had not received any prior complaints about injuries suffered on the structure. The trial judge reserved ruling. The jury found for Bialek but found that he was 45% responsible for his

injuries. The trial judge denied Moraine's post-trial motions which raised, again, the issues in the motion for directed verdict.

Moraine argues that the trial court should have granted its motion for directed verdict at the close of the plaintiff's case because it did not owe Bialek a duty to remedy an open and obvious condition on its premises. Alternatively, the school contends that if it did owe such a duty, Bialek failed to establish that it acted in a willful and wanton manner in its upkeep of the goalpost.

In assessing the denial of a motion for a directed verdict, we view the evidence presented and make all reasonable inferences in a light most favorable to the plaintiff. We will overturn the trial court's ruling only if the evidence so overwhelmingly favored the defendant that no contrary judgment on the evidence could stand. *La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 470 N.E.2d 1239.

Under section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—106), local entities are not liable for ordinary negligence in the upkeep of parks, playgrounds, and athletic fields. They are only liable for willful and wanton conduct. As in ordinary negligence cases, a defendant must owe a duty to the plaintiff before plaintiff can allege that the defendant's conduct was willful and wanton. (*Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 571, 617 N.E.2d 531, *appeal denied* (1993), 153 Ill. 2d 560, 624 N.E.2d 808.) The question of the existence of a duty is one of law for this court to decide. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) Moraine argues that it owed no duty to plaintiff to remedy a condition on its property which was open and obvious, and the dangers of which could easily be appreciated and avoided by a child, let alone a group of adults, including the then 25-year-old Bialek. Bialek counters that the doctrine of distraction, as enunciated by our supreme court in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, conferred a duty upon Moraine.

In *Ward v. K mart Corp.* (136 Ill. 2d at 142-55), a negligence action, the court revisited the standards applicable to the determination of whether a landowner owes an invitee a duty of ordinary care to warn of or remedy an open and obvious condition. The court rejected the long-standing rule that when a dangerous condition is open and obvious, a landowner need never warn or otherwise protect those who might encounter the condition. Rather, the court held that a duty to warn of or to remedy an open and obvious condition arises

when, under the facts of the case, "the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted *** or forgetful of the condition after having momentarily encountered it." *Ward*, 136 Ill. 2d at 152.

In this case, Bialek was not an invitee, nor even a licensee. Rather, he was a trespasser, to whom is owed a lesser standard of care, *i.e.*, to be protected only from willful and wanton conduct. (*Helms v. Chicago Park District* (1994), 258 Ill. App. 3d 675, 630 N.E.2d 1016.) However, given the restriction on liability imposed by the Tort Immunity Act, these status distinctions are of moment only insofar as they shed light on whether *Ward* applies in an action alleging willful and wanton conduct.

Indeed, no court has yet addressed whether the duty analysis adopted in *Ward* applies to a situation in which the landowner's tort liability is restricted to its willful and wanton conduct. Although Bialek's injuries occurred prior to the decision in *Ward*, the pleadings in this case, as well as the briefs on appeal, have proceeded as if *Ward* pertained. Thus, we address this question.

Illinois courts have traditionally applied the same analysis regarding the duty to remedy an open and obvious condition when trespassers, as opposed to invitees and licensees, have been involved. When a condition is open and obvious, the landowner has owed to the trespasser no duty to remedy the condition. (See *Hansen v. Goodyear Tire & Rubber Co.* (1990), 194 Ill. App. 3d 351, 354, 551 N.E.2d 253, *appeal denied* (1990), 132 Ill. 2d 544, 555 N.E.2d 376; *Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881, 886, 522 N.E.2d 343.) Thus, that our supreme court has seen fit to adopt exceptions to that rule as to invitees implies that the same exceptions apply to the class of entrants upon land to whom is owed only a duty to refrain from willful and wanton conduct.

The only willful and wanton case other than this one in which a party has even posited the doctrine of distraction as conferring a duty is *Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 606 N.E.2d 482. In *Oropeza*, the court held that a park district covered by the Tort Immunity Act owed no duty to a plaintiff who injured his ankle while playing basketball on one of defendant's concrete basketball courts, despite the fact that it contained visible four-inch by one-inch trenches. The court relied on the pre-*Ward* doctrine that "[w]here a situation presents obvious risks which persons would be expected to appreciate and avoid, there is no duty to remedy that situation." (*Oropeza*, 238 Ill. App. 3d at 401.) However, without citing *Ward*, the court rejected plaintiff's argument that because one

playing basketball would naturally be distracted from dangerous conditions surrounding him, the defendant's failure to fill the trenches constituted willful and wanton conduct. The *Oropeza* court emphasized that "[w]e cannot imagine that a breach of duty predicated on the doctrine of distraction can overcome the limitation on liability of a public entity to only willful and wanton conduct," thus implying that *Ward* does not apply in a willful and wanton case. (*Oropeza*, 238 Ill. App. 3d at 401.) We believe, however, that the law requires that the analysis of whether a duty exists not differ simply because the conduct for which a defendant is liable is willful and wanton, rather than negligent.

Contrary to the implication in *Oropeza*, the question of the existence of a legal duty is necessarily independent of and preliminary to that of causation. Thus, the theoretical application of the distraction doctrine in a case is unrelated to whether the plaintiff has predicated his complaint upon negligence or willful and wanton conduct. It is axiomatic that in order for a plaintiff to recover for negligence or willful and wanton conduct, he must establish that the defendant owes a duty before he is permitted to establish that a breach of that duty was the proximate cause of his injuries. (*Ward*, 136 Ill. 2d at 140; *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 571, 617 N.E.2d 531, *appeal denied* (1993), 153 Ill. 2d 560, 624 N.E.2d 808.) A plaintiff may be able to convince a jury that a defendant "caused" his injury—for instance, the jury here found that Bialek was hurt because Moraine failed to pad, warn of, or remove the goalpost in question; however, if this court determines, as a matter of law, that Moraine owed no duty to act regarding the goalpost, then the cause of the injury, whether it be couched in terms of the breach of ordinary care or in terms of willful and wanton conduct, is irrelevant.

■ *Ward* imposes a duty of care to remedy open and obvious conditions when "the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted." (*Ward*, 136 Ill. 2d at 152.) One who "should reasonably anticipate injury" to someone "who may be reasonably expected to be distracted" and ignores the danger might be acting in conscious disregard of the safety of a plaintiff. Thus, we hold that the analysis of legal duty enunciated in *Ward* applies in actions alleging willful and wanton conduct.

Having so held, however, we reject Bialek's contention that the distraction doctrine is satisfied in this case. In *Ward*, a shopper purchased a large mirror at a K mart store. In order to exit the store,

the plaintiff had to carry the mirror through glass doors. Just outside the doors stood two concrete posts. Because the mirror he was carrying blocked his view as he exited, he did not see the posts and walked into one of them, injuring himself. The plaintiff acknowledged having seen the posts on his way into the store and "subconsciously" knew they were there. (*Ward*, 136 Ill. 2d at 136-37.) In finding a duty, the supreme court reasoned that a defendant in such circumstances, having essentially lured the shopper onto its premises, should foresee that he might be distracted from, or forgetful of, an open and obvious condition which he only momentarily and perhaps subconsciously encountered. Conversely, in *Oropeza*, plaintiff voluntarily and carelessly encountered precisely the danger which resulted in injury. In these circumstances, a plaintiff will not be heard to claim that a distraction of his own making imposes a duty on the defendant. As the *Oropeza* court aptly stated by way of example, "[p]laintiff was not in a situation where he was required to encounter risks *** when he sustained the *** injuries." *Oropeza*, 238 Ill. App. 3d at 401.

In *Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 617 N.E.2d 531, *appeal denied* (1993), 153 Ill. 2d 560, 624 N.E.2d 808, a boy drowned in a river leased by the City of Rockford. Plaintiff alleged that hidden debris dumped into the river by the defendant construction company, and of which the city was aware, caused dangerous undercurrents which swept the boy to his death. The court held that the distraction doctrine was not satisfied:

> "A person who is generally exercising reasonable care for his own safety either does not enter a body of water for recreation, or once in it, does not drown because he has become distracted or forgetful of the otherwise obvious danger. We believe it is not reasonably foreseeable to an owner or occupier of land that a person entering a body of water for recreation would somehow be distracted from the fact that he is in the water." *Lerma*, 247 Ill. App. 3d at 576.

■ Here, Bialek and his friends decided to play football on Moraine's field, without its permission, near the goalpost which was not held out by Moraine as part of a football field. Bialek and his friends set up the field with full knowledge that an open and obvious danger, the goalpost, bracket and all, was in the field of play. Indeed, Bialek and his friends wanted the dangerous condition to be part of their game. Furthermore, contrary to the misleading assertion by Bialek in his brief, the game was not "centered" around the goalpost. The players did not even use the goalpost as a goalpost. Had they done so, the injury to Bialek might not have occurred. Rather, they used the goalpost as a boundary marker. *Lerma*, as well as this court's decision in *Helms v. Chicago Park District* (1994), 258 Ill. App. 3d

675, 630 N.E.2d 1016, instruct that Bialek did not run into the goal-post, of which he was aware, because he was distracted.

Most instructive on the issue of distraction is the court's reasoning in *Richardson v. Vaughn* (1993), 251 Ill. App. 3d 403, 622 N.E.2d 53, *appeal denied* (1994), 155 Ill. 2d 576, 633 N.E.2d 14. In *Richardson*, plaintiff was at a picnic on property owned by defendants. A water balloon fight ensued. Plaintiff saw two friends approach him with water balloons, and he rose and began to run. Ahead of him, he saw a cable stretched, at a height of two to three feet, across a boundary of the field. Plaintiff vaulted the cable, but landed poorly and injured his knee.

In rejecting plaintiff's assertion of the distraction doctrine, the court stressed that the doctrine did not apply in situations where a plaintiff's voluntary recreational activities cause him to blind himself to dangers that surround him:

> "The *Ward* doctrine does not charge possessors of land with a duty to anticipate the harm that might result from [one's] inattention to a known or obvious condition. Instead, defendants' duty arises where they could reasonably anticipate [a person's] distraction or momentary forgetfulness. Although drawing the line between mere inattention and reasonably foreseeable distraction is not susceptible to mathematical precision and requires a careful focus upon the particular facts at hand, the failure to make this distinction would impermissibly expand a defendant's scope of potential liability to unforeseeable dimensions. Moreover, imposing a duty on possessors of land that is premised on a plaintiff's inattentiveness would place a burden on possessors of land tantamount to requiring them to insure the safety of their invitees." (*Richardson*, 251 Ill. App. 3d at 408-09.)

The distraction or forgetfulness doctrine, as enunciated in *Ward*, is not satisfied simply because the plaintiff begins mindlessly using an open and obvious dangerous condition. (See, *e.g., Auguste v. Montgomery Ward & Co.* (1994), 257 Ill. App. 3d 865, 629 N.E.2d 535.) Thus, the fact that Bialek was playing football is not evidence that he was distracted. Under the circumstances, we cannot say that Bialek was exercising the reasonable care for his own safety required to invoke the distraction doctrine.[1] Moraine had no duty to remedy the open and obvious condition presented by the goalpost.

---

[1] In so holding, we caution that we are aware that in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522, the supreme court forbade comparison of comparative negligence to willful and wanton conduct. However, the question at this stage of this case is one of duty, and not causation. Thus, that part of the holding in *Burke* does not apply here.

■ Even if Moraine owed a duty to warn or protect plaintiff from the goalpost, we hold that the evidence Bialek presented to establish willful and wanton conduct so overwhelmingly favored Moraine that it was entitled to a directed verdict. Defendant's conduct in this case was, at worst, negligent and does not remotely approach the level Illinois courts have required to constitute willful and wanton, as a matter of law.

The Tort Immunity Act defines willful and wanton conduct as

"a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (Ill. Rev. Stat. 1987, ch. 85, par. 1—210.)

Willful and wanton conduct, as contemplated in section 1—210 of the Tort Immunity Act, consists of more than mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible future emergency. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 449, 593 N.E.2d 522.) Thus, willful and wanton conduct requires a " 'conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.' " *Burke*, 148 Ill. 2d at 449, quoting Restatement (Second) of Torts § 500, Comment *g*, at 590 (1965).

In *Dunbar v. Latting* (1993), 250 Ill. App. 3d 786, 621 N.E.2d 232, the court synthesized recent case law analyzing the quantum of evidence necessary to establish willful and wanton conduct:

"Willful and wanton conduct may be found to exist where the local public entity takes no action to correct a condition even though it was informed about the dangerous condition *and* knew that other persons had previously been injured because of the dangerous condition. [Citation.] Also, a local public entity may be found to have engaged in willful and wanton conduct when it intentionally removes a safety feature from its recreational property. [Citation.] However, where there are no facts or allegations to show that the local public entity engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition, the conduct of the local public entity does not rise to the level of willful and wanton conduct." (Emphasis added.) (*Dunbar*, 250 Ill. App. 3d at 792.)

The evidence in this case does not satisfy the standards as synthesized by the *Dunbar* court. Moraine had no notice of prior injuries which had occurred as a result of the goalpost structure, nor did it remove safety features that had been attached to the structure. Furthermore, the fact that Moraine padded the goalposts on its official football field

located on a different campus establishes little, if anything, in the context of an allegation of willful and wanton conduct.

In this case, Moraine was guilty of an omission to act which, given the evidence, constituted, at worst, negligent conduct for which it is not liable. See *Oravek v. Community School District 146* (1994), 264 Ill. App. 3d 895, 637 N.E.2d 554 (school's failure to remove skateboard ramp on which plaintiff was injured may be negligent, but not willful and wanton); *Foley v. City of La Salle* (1993), 241 Ill. App. 3d 54, 608 N.E.2d 964 (city not willful and wanton in failing to warn of or repair a rut-filled softball field of which it was aware and over which plaintiff tripped and injured his knee while playing softball).

During oral argument, plaintiff urged that this court's decision in *Muellman v. Chicago Park District* (1992), 233 Ill. App. 3d 1066, 600 N.E.2d 48, supports his contention that Moraine acted in a willful and wanton manner. We disagree. In *Muellman*, the plaintiff had tripped and broken her ankle on a drainage pipe measuring $3^1/2$ inches in diameter, from which the cover had been removed. Furthermore, defendant knew that the safety cover had been removed from many of the pipes in the area, but did not replace them. At the time of the accident, the pipe was hidden by four to five inches of grass; however, the evidence showed that defendant mowed the grass around the pipes to a level which would not be a danger to its gardening equipment, thus acknowledging that the pipes posed a hidden risk to those unaware of their presence and intentionally disregarding the risk. These facts distinguish *Muellman* from this case.

Indeed, this case is much more akin to *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409. In *Majewski*, plaintiff had fallen on broken glass while playing football on a field operated by the defendant. In affirming the trial court's dismissal of the action, the court held that the defendant which, like Moraine, maintained a groundskeeping staff to remove debris from and otherwise care for the field was not willful and wanton simply because it failed to warn of the presence of or remove the glass from the field. As the court aptly noted, "plaintiff alleged mere negligence, but labelled it as willful and wanton." (*Majewski*, 177 Ill. App. 3d at 341.) Here, the evidence established no more.

Reversed.

MANNING, J., concurs.

JUSTICE BUCKLEY, concurring in part and dissenting in part:

I agree with the majority that the goalpost was an "open and obvious" danger, that the "distraction" doctrine enunciated in *Ward* applies in actions alleging willful and wanton conduct, and that Moraine was entitled to a directed verdict. I cannot agree, however, that defendant did not owe plaintiff a duty. In coming to its conclusion that the "distraction" doctrine does not apply, the majority relies heavily upon *Oropeza, Lerma,* and *Richardson.* I do not agree that these cases stand for the broad propositions that the majority draws from them. Additionally, I find the majority's rationale for distinguishing *Ward* to be facially unconvincing.

In order for a landowner to have a duty to warn of or otherwise protect people from an "open and obvious" condition on his property, it must reasonably be expected that a person on the premises who is generally exercising reasonable care for his own safety may be distracted or forgetful of the condition after having momentarily encountered it. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) In *Richardson,* plaintiff was at a picnic on defendant's property when, during a water balloon fight, he jumped over an outstretched cable and hurt his knee upon landing. Even assuming the majority is correct in drawing from this case the broad rule that the "distraction" doctrine does not apply "in situations where a plaintiff's voluntary recreational activities cause him to blind himself to dangers that surround him" (267 Ill. App. 3d at 864), such a proposition does not apply under the facts presented here.

The *Richardson* plaintiff was running at full speed in the direction of an "open and obvious" outstretched cable while looking behind him. At the last instant, he observed the cable and decided to jump over it. The *Richardson* court determined that plaintiff was "inattentive" and not distracted or forgetful of a condition of which he had been aware because the evidence showed that plaintiff had not observed the cable prior to the moment of the accident. The court reasoned that "it would offend logic to contend that one could be forgetful of a condition of which he had no prior knowledge." (*Richardson,* 251 Ill. App. 3d at 409.) The *Richardson* court held, therefore, that the "distraction" doctrine did not apply because plaintiff was not exercising reasonable care for his own safety, but had "blind[ed] himself to the probable consequences of his own actions." 251 Ill. App. 3d at 408.

The *Richardson* court's conclusion was in no way dependent upon the fact that plaintiff was engaged in "voluntary recreational activities." In fact, the court stated that "defendants could reasonably anticipate that patrons of their facility might engage in vigorous physical activities of the type ordinarily associated with an outdoor

picnic." (251 Ill. App. 3d at 408.) Thus, even though plaintiff was engaged in "voluntary recreational activities," if plaintiff had been exercising reasonable care for his own safety and had been aware of the cable, the court's conclusion would have been different. Additionally, *Richardson* does not apply here because plaintiff in this case was aware of the condition. The record shows that plaintiff knew of the presence of the goalpost. Therefore, unlike in *Richardson*, it cannot be said that the plaintiff here blinded himself to the "open and obvious" condition.

*Lerma* and *Oropeza* also do not support the majority's conclusion that the "distraction" doctrine does not apply. In *Lerma*, plaintiff's decedent drowned in a river leased by the City of Rockford. The *Lerma* court found that a body of water is *per se* an "open and obvious" risk. The *Lerma* court held, therefore, that the "distraction" doctrine did not apply because "it is not reasonably foreseeable to an owner or occupier of land that a person entering a body of water for recreation would somehow be distracted from the fact that he is in the water." *Lerma*, 247 Ill. App. 3d at 576.

The *Oropeza* court found the "distraction" doctrine not satisfied where plaintiff was injured while playing on a basketball court which contained "clearly visible trenches that were about one inch deep and four inches wide." (*Oropeza*, 238 Ill. App. 3d at 400.) *Oropeza* is analogous to *Lerma* because, as in *Lerma*, the *Oropeza* plaintiff was "in the water." Although the "trenches" were open and obvious, the basketball court itself was an "open and obvious" danger because of the trenches. As in *Lerma*, it was not reasonably foreseeable that the plaintiff would somehow be distracted from the fact that he was playing on the court.

In the instant case, however, plaintiff was not "in the water." It was not the field upon which plaintiff was playing which was the "open and obvious" condition; it was the goalpost on the side of the field. The majority is incorrect in drawing from *Lerma* and *Oropeza* the general proposition that "a plaintiff will not be heard to claim that a distraction of his own making imposes a duty on the defendant." (267 Ill. App. 3d at 863.) Such a broad rule is contrary to the *Ward* rationale and changes the focus of the proper inquiry. The question is whether the defendant should reasonably have anticipated a distraction despite the obviousness of the condition. If a distraction of plaintiff's own making is reasonably foreseeable, then defendant owes him a duty. It cannot seriously be argued that defendant could not reasonably have anticipated that people would play football on its field or that, while doing so, might be distracted by their game and run into the goalpost. This is clearly evident from the fact that

football goalposts are padded in anticipation of just such an occurrence.

The majority also distinguishes *Ward* by asserting that in *Ward* the defendant "essentially lured the shopper onto its premises," whereas

> "[c]onversely, in *Oropeza*, plaintiff voluntarily and carelessly encountered precisely the danger which resulted in injury. \*\*\* As the *Oropeza* court aptly stated by way of example, '[p]laintiff was not in a situation where he was required to encounter risks \*\*\* when he sustained the \*\*\* injuries.' " (267 Ill. App. 3d at 863.)

The inescapable conclusion to be drawn from this reasoning is that, unlike in *Ward*, where plaintiff was "lured" onto the premises, the majority views this situation as one where plaintiff was not required to encounter the condition and voluntarily and carelessly did so. According to the *Ward* court's reasoning, however, the fact that plaintiff was invited to the store merely supported the conclusion that defendant had a duty to plaintiff because it was "reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting." (*Ward*, 136 Ill. 2d at 154.) The mere fact that the *Ward* plaintiff may have been "lured" onto the premises does not mean that he did not voluntarily and carelessly encounter the risk. In fact, it could be said that in almost every situation where a person is injured after being distracted or forgetful of an open and obvious condition, that person has voluntarily and carelessly encountered the condition. Such a determination, however, goes to plaintiff's degree of fault and is a damage-reducing factor; it does not address the relevant question of whether defendant owed plaintiff a duty.

Moreover, the fact that plaintiff was not in a situation where he was required to encounter the risk does not mean that defendant owed no duty. Whether plaintiff was required to encounter the risk goes to reasonable foreseeability. As the full quote from *Oropeza* shows, the only situation where a person would truly be required to encounter risks is when "he [is] required to encounter risks *to perform duties associated with employment.*" (Emphasis added.) (*Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 401, 606 N.E.2d 482, 484.) It cannot be said that the *Ward* plaintiff was required to encounter the risk. Thus, the majority has failed to distinguish *Ward* at all.

In determining the applicability of the "distraction" doctrine, the proper inquiry is two-pronged. First, the court must determine if the condition is "open and obvious." Second, if it is open and obvious, the question is whether it was reasonably foreseeable that a person who

is exercising reasonable care for his own safety might be distracted or forgetful of the condition after momentarily encountering it. The majority, however, has added an intermediary inquiry which asks whether plaintiff created the distraction himself, was engaged in voluntary recreational activities or was required to encounter the risks. Such questions merely go to the reasonable foreseeability of the distraction. Even if a plaintiff is not required to encounter the condition and is distracted by his own games during voluntary recreational activities, a defendant may still owe him a duty if such a distraction is reasonably foreseeable. The majority's reasoning, however, makes the answer to these questions dispositive of the existence of a duty and ignores the question of reasonable foreseeability.

In this case, defendant owned and maintained an athletic field with a goalpost. Defendant knew people used the field for athletic purposes and it was foreseeable that people would enter the premises, even without permission, and play football. Contrary to the majority's assertion, the fact that plaintiff was playing football *is* evidence that he was distracted. In my opinion, it cannot seriously be contested that it was reasonably foreseeable that persons playing football on defendant's premises could be distracted by their game and run into the goalpost. Thus, I would find that defendant did owe plaintiff a duty to warn of or otherwise protect him from the open and obvious condition on its premises.