**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180230-U

Order filed February 11, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| ANDREA WYGLE and JAMES WYGLE, | ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Peoria County, Illinois, |
| | ) | |
| v. | ) ) | Appeal No. 3-18-0230 Circuit No. 15-L-193 |
| | ) | |
| PEORIA PARK DISTRICT, | ) ) | Honorable Jodi M. Hoos, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Lytton and Justice O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The trial court did not err as a matter of law when it granted the defendant's motion for summary judgment.

¶ 2    The plaintiffs, Andrea and James Wygle, filed a complaint founded in personal injury and loss of consortium against the Peoria Park District for an injury Andrea sustained at a recreational facility called RiverPlex in December 2014. The defendant, the Peoria Park District, filed a motion for summary judgment, which the trial court granted. Andrea and James appeal.

¶ 3                                    FACTS

¶ 4          The Peoria Park District operates and owns a recreational facility called RiverPlex, which offers memberships to the public. RiverPlex has various recreational and exercise facilities, including an indoor aquatic center, and offers classes to its members. RiverPlex has a number of employees that work on a regular basis, including instructors, lifeguards, and maintenance workers. The pools at RiverPlex use a central drain system that involves white plastic grates around the outside perimeters of the pools. The grates have plastic strips, also referred to as trim, coping, or L channels, that hold the grates in place.

¶ 5          On December 8, 2014, Andrea was present at RiverPlex to take a scheduled class. Andrea walked from the women's locker room toward the steps that led down to the pool. The walkway steps narrow due to a support sticking out into a portion of the walkway. To the immediate left of the walkway is a grate. As Andrea walked down the walkway, she was speaking to Maria Nelson, a classmate. She turned her head to listen to Nelson's comments, caught her right foot on a strip that was sticking up from one of the grates, and fell. Andrea suffered physical injuries that required transportation to the emergency room.

¶ 6          In September 2015, Andrea and James filed a two-count complaint against the Peoria Park District arising out of her December 8, 2014, fall. First, Andrea's count was based on personal injuries that she claimed resulted from a defect and unreasonably dangerous condition, namely, the plastic strips on the grates. James's count was based on loss of consortium and he asked for compensation as he had become liable for Andrea's medical expenses.

¶ 7          In November 2015, the Peoria Park District filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)). First, the Peoria Park District argued, that in accordance with the Local Governmental and Governmental

2

Employees Tort Immunity Act (Tort Immunity Act) provision regarding property used for recreational purposes (745 ILCS 10/3-106 (West 2014)), it can only be liable for an injury if it is guilty of willful and wanton conduct. Second, the Peoria Park District argued that the ordinary negligence action provided by the Tort Immunity Act required that it had actual or constructive notice of the existence of such a condition that was not reasonably safe in a reasonably adequate time prior to the injury to have taken measures to remedy or protect against such condition (745 ILCS 10/3-102 (West 2014)). The Peoria Park District argued that Andrea and James's complaint failed to allege facts that would grant them relief under these sections.

¶ 8        In December 2015, Andrea and James filed their first amended complaint, adding additional statements claiming that the Peoria Park District had actual and constructive knowledge of the alleged defect and had a conscious disregard for the safety of its patrons, demonstrating willful and wanton conduct. The Peoria Park District filed a section 2-615 motion to dismiss, arguing that the facts set forth in the first amended complaint were insufficient to state a cause of action for personal injuries and loss of consortium. In February 2016, the trial court denied the Peoria Park District's motion to dismiss.

¶ 9        In August 2016, the Peoria Park District filed its answer and raised the affirmative defenses of contributory negligence and sections 3-102 and 3-106 of the Tort Immunity Act (745 ILCS 10/3-102, 3-106 (West 2014)).

¶ 10        After nearly two years of discovery, the Peoria Park District filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2018)). In its motion, the Peoria Park District argued that summary judgment was appropriate because a number of depositions demonstrated that (1) Andrea and James had no evidence of willful and wanton conduct as required by section 3-106 of the Tort Immunity Act (745 ILCS 10/3-106

3

(West 2014)), (2) Andrea and James had no evidence of ordinary negligence as required by section 3-102 of the Tort Immunity Act (745 ILCS 10/3-102 (West 2014)), and (3) the condition complained of was open and obvious.

¶ 11    The following facts were set forth in the Peoria Park District's motion for summary judgment. Andrea testified that she fell while approaching the pool before her water aerobics class. She noted three of her classmates were there "doing walks" before the class started. She had not seen her classmate Nelson in some time, so they exchanged pleasantries. As Andrea continued to walk, Nelson said something else to her, and she turned around to answer Nelson's question. At that time, Andrea felt her right foot catch something and she fell. She was taken to the emergency room and subsequently had surgery for fractures to her left forearm.

¶ 12    Andrea stated that the toe of her aquatic shoe caught on a white plastic strip of a pool drain grate that ran along the perimeter of the pool. She also stated that she did not notice the plastic strip sticking up at that time, but in prior visits to RiverPlex, she always noticed the plastic strip and conscientiously avoided it. Once she entered the pool, she was able to see the strip. She also noted that she did not intentionally walk into the strip, but she only did so because she was looking over her shoulder while talking with a friend. The week before her fall, she observed and avoided the plastic strip on four or five other occasions, but she never reported the issue to anyone at RiverPlex or the Peoria Park District. She believed that the plastic strip had been raised for the entire week prior to her fall. It was also noted that Andrea wears bifocals, but she was not wearing her eyeglasses at the time of her fall.

¶ 13    Nelson recalled seeing the plastic strip and noted that it was raised approximately half an inch to three-fourths of an inch. Johanna Odum, another classmate who was in the pool at the time of the fall, estimated that the plastic strip was raised less than a quarter of an inch. Odum

4

noticed the plastic strip prior to Andrea's fall, but noted that "it was so marginal" that she "didn't see it as a problem" or "as a hazard." Maryann Rastatter, another classmate who was talking to Andrea at the time of her fall, testified that it was no surprise to the water aerobics class that the plastic strip would occasionally rise. Linda Kamm, an aerobics instructor at RiverPlex, testified, that prior to the accident, she saw the plastic strip stick up approximately an eighth of an inch on five separate occasions. Each time the plastic strip "popped up," she used her fist or hand to push it back into place. Prior to Andrea's fall, Kamm never witnessed anyone trip on the plastic strip nor did she receive any complaints that anyone was injured as a result of the plastic strip.

¶ 14        Daniel Downard, a RiverPlex repairman since the opening of RiverPlex, testified concerning the drain grates. He testified that he was responsible for maintaining the pools and drain grates at issue. A few years after RiverPlex opened, Downard was informed by the lifeguards and RiverPlex members that the drain grates would occasionally "pop up" in the curved areas of the pool's perimeter, so he began securing all of the plastic strips of the drain grates in the curved areas of the pools with screws to avoid the laborious process of pushing the plastic grates down. On rare occasion, the secured pool grates would "work themselves loose" as a result of the plastic strip or screw failing, requiring him to re-secure the loose drain grates. Downard did not see any problems, and was not made aware of any safety complaints, regarding the plastic strip at issue in the time period immediately prior to Andrea's fall. He was not aware of anyone ever falling at RiverPlex due to tripping on a drain grate.

¶ 15        Matthew Majors, the RiverPlex maintenance foreman since 2008, also testified that he was not aware of anyone falling due to the plastic drain grates. He stated, that along the curved areas of the pool's perimeter, the grates were fastened with screws to secure their placement. If a drain grate were to "pop up" and become raised above the plane of the floor, it would be due to a

failure of the screw used to secure the drain grate. Susan Wheeler, a RiverPlex aquatics supervisor, testified that the drain grates would occasionally work themselves up three-sixteenths of an inch, which would require them to be pushed back into place. Last, Matthew Freeman, a RiverPlex supervisor since 2001, testified that he was not aware of anyone other than Andrea that had tripped and fell as a result of a pool drain grate and had not been aware of any complaint that the pool drain grates posed a safety concern or a trip hazard.

¶ 16    The evidence also showed that nothing about the layout of RiverPlex or the pools required Andrea to walk on or over the plastic strip. There was a cement walkway around the pool that allowed members to completely avoid the plastic grates. Following Andrea's fall, RiverPlex secured the loose plastic strip at issue with screws.

¶ 17    In April 2018, the trial court heard arguments on the Peoria Park District's motion for summary judgment. The court granted the motion, finding that the facts presented did not support a finding of willful and wanton conduct on behalf of the Peoria Park District and that the Peoria Park District did take measures, albeit "maybe not good ones," to remedy or protect the public from these grate strips. Regarding the Peoria Park District's open and obvious argument, the court declined summary judgment on that basis because it involved a question of fact and otherwise found that the Peoria Park District was entitled to immunity. Andrea and James appeal.

¶ 18                              ANALYSIS

¶ 19    On appeal, Andrea and James argue that the trial court erred as a matter of law when it granted the Peoria Park District's motion for summary judgment.

¶ 20    Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018).

6

"The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the movant is clear and free from doubt. *Id.* In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. "On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law." *Monson*, 2018 IL 122486, ¶ 12. We review the circuit court's summary judgment ruling *de novo*. *Id.*

¶ 21                                    A. Section 3-106 of the Tort Immunity Act

¶ 22          First, Andrea and James argue that the trial court erred as a matter of law when it granted the Peoria Park District's motion for summary judgment based on section 3-106 of the Tort Immunity Act. This section of the Tort Immunity Act provides, as follows:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 2014).

The Tort Immunity Act defines "willful and wanton conduct" as "[A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter

7

indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2014). Our supreme court has noted that willful and wanton conduct approaches the degree of blame associated with intentional harm because the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of that risk. See *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 448 (1992). Whether conduct qualifies as willful and wanton is generally an issue of fact for the jury to decide. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27. "However, where *** discovery has been completed and what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered." (Internal quotation marks omitted.) *Id.*

¶ 23        In *Dunbar v. Latting*, 250 Ill. App. 3d 786, 792 (1993), this court previously explained when a public entity may be found to have engaged in willful and wanton conduct as follows:

> "Willful and wanton conduct may be found to exist where the local public entity takes no action to correct a condition even though it was informed about the dangerous condition and knew that other persons had previously been injured because of the dangerous condition. [Citation.] Also, a local public entity may be found to have engaged in willful and wanton conduct when it intentionally removes a safety feature from its recreational property. [Citation.] However, where there are no facts or allegations to show that the local public entity engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition, the conduct of the local public entity does not rise to the level of willful and wanton conduct. [Citation.]"

8

¶ 24          Andrea and James argue that the following facts support their complaint that the Peoria Park District engaged in willful and wanton conduct: (1) within a few years of RiverPlex opening, members and employees noticed the plastic strips were popping up; (2) both before and after Andrea's fall, employees of RiverPlex screwed down some of the L channels to keep them from popping up; (3) members and employees would push these plastic strips down; (4) it had knowledge of the existence of this condition and that it occurred in the curved areas of the pool; and (5) it knew that a support pillar narrowed the walkway to the pool to a width of about two feet adjacent to the grate with the L channels or trim that had the tendency to pop up. Andrea and James contend that the Peoria Park District failed to take reasonable precautions after knowing of the impending danger and it had knowledge of facts which would disclose this danger to a reasonable person. Alternatively, they argue that the Peoria Park District failed to discover the defective strip, which caused the injury, through recklessness or carelessness, when it could have been discovered by the exercise of ordinary care.

¶ 25          Here, Andrea and James do not argue or present facts demonstrating that the Peoria Park District failed to take action to correct a condition *and* knew that other persons had previously been injured because of the dangerous condition. They also do not argue or present facts demonstrating that the Peoria Park District intentionally removed a safety feature from RiverPlex. Last, they do not argue or present facts demonstrating that the Peoria Park District engaged in any intentional act or knew of other injuries or accidents caused by the allegedly dangerous condition. To the contrary, the evidence of record demonstrates that the Peoria Park District was aware of the plastic strips popping up from the grates, and in response, would place screws in the strips to secure them to the grate. The screws would fail, and RiverPlex employees would re-secure the strips with screws, and members would press down on the strips with their

9

hands. RiverPlex employees, Downard, Majors, Kamm, and Freeman, testified that they were not aware of anyone ever tripping and falling on the drain grates until Andrea's fall. Based on the record before us, and the conditions articulated in *Dunbar*, Andrea and James failed to present facts demonstrating that the Peoria Park District engaged in willful and wanton conduct. See *id.*

¶ 26                          B. Section 3-102(a) of the Tort Immunity Act

¶ 27         Andrea and James also argue that the trial court erred as a matter of law when it granted the Peoria Park District's motion for summary judgment based on section 3-102(a) of the Tort Immunity Act. In fact, Andrea and James dedicate much of their appellate brief to the issue of whether the Peoria Park District had notice of the alleged defective condition and whether the open and obvious doctrine applies. For the reasons that follow, we find that section 3-102 of the Tort Immunity Act is inapplicable to the case at bar.

¶ 28         Section 3-102(a) of the Tort Immunity Act provides, in relevant part, as follows: "*Except as otherwise provided in this Article*, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition \*\*\*." (Emphasis added.) 745 ILCS 10/3-102(a) (West 2014). Section 3-106 provides otherwise when the property in question is recreational property. See *Dunbar*, 250 Ill. App. 3d at 791-92. Here, there is no dispute that RiverPlex is a recreational property. Therefore, the Peoria Park District is liable for injuries occurring on its recreational property, RiverPlex, only if it is guilty of willful and wanton conduct proximately causing such injuries. 745 ILCS 10/3-106 (West 2014). Therefore, "when no dispute exists concerning the recreational nature of the property, section 3-106, and not section 3-102, governs whether the public entity is liable." *Murphy v. Springfield Park District*, 2019 IL App (4th) 180662, ¶ 49.

10

¶ 29    For the foregoing reasons, the trial court did not err as a matter of law when it granted the Peoria Park District's motion for summary judgment.

¶ 30                                CONCLUSION

¶ 31    The judgment of the circuit court of Peoria County is affirmed.

¶ 32    Affirmed.